No. 18,371.

C. G. DAVIS, *Appellant,* v. COLER L. SIM et al., *Appellees.*

SYLLABUS BY THE COURT.

DAMAGES FROM FLOOD—*Defective Dam—Newly Discovered Evidence—New Trial.* In an action for damages from a flood, alleged to have been caused by the breaking of a dam, witnesses for the defendants testified that they saw the dam still standing after the time when the injury was done. The plaintiff produced no direct evidence to the contrary, but asked a new trial on the ground that he had subsequently discovered eyewitnesses who could contradict this testimony. *Held,* that the new evidence was not cumulative, and was of such importance that its effect should be passed upon by a jury, and that the diligence shown by the plaintiff was sufficient to entitle him to a new trial.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed May 9, 1914. Reversed.

*Fred Stanley, Claude C. Stanley,* and *Benjamin F. Hegler,* all of Wichita, for the appellant.

*Kos Harris, V. Harris, H. C. Sluss, D. M. Dale, S. B. Amidon,* and *Jean Madalene,* all of Wichita, for the appellees.

The opinion of the court was delivered by

MASON, J.: C. G. Davis sued Coler L. Sim and others for injuries to his property caused by a flood which he alleged to have been occasioned by the giving way of a dam maintained by them, due to negligence in its construction. A verdict was rendered for the defendants, the special findings showing that the jury were of the opinion that the flood that caused the injury was not the result of the going out of the dam. Judgment was rendered in accordance with the verdict, and the plaintiff appeals.

A reversal is asked principally because of the over-

ruling of a motion for a new trial on the ground of newly discovered evidence. The answer, in addition to a general denial, contained allegations that if the plaintiff's premises were flooded, and if the dam went out, the cause thereof was a rain of such extraordinary volume that it could not reasonably have been anticipated. There was evidence for and against the proposition that the volume of the rainfall was unprecedented. There was also evidence on both sides of the question regarding the exercise of due care in the construction of the dam, and the jury may have thought that the defendants were negligent in this regard, but that the negligence was not the proximate cause of the plaintiff's injury. The plaintiff's property, where the damage was done, was situated four or five miles below the dam. The jury obviously concluded that the loss was not due to the breaking of the dam, for they found specially that the water was highest on the Davis land between four and five o'clock in the afternoon, and in effect that the dam did not go out until some time after that. One of the defendants and four other witnesses testified that they were at the dam just before dark (the date was May 31), and that it had not then gone out. The plaintiff had no direct evidence on the subject, and his newly discovered evidence is that of three persons who make affidavits that they saw the dam go out in the afternoon (of May 31, 1908), between three o'clock and half past four. This evidence can not be regarded as cumulative, for while it was of the same character and bore upon the same point as that introduced by the opposing party, it was to the contrary effect. (*Haughton v. Bilson*, 84 Kan. 129, 113 Pac. 400.) The new evidence is so important that its weight is a matter that ought to be determined by the jury, assuming that due diligence was shown in procuring it. The testimony of the five witnesses for the defendants, as to the time the dam went out, if accepted as correct, was practically conclusive against

the plaintiff. He was able to oppose it only by infer-
ences. The three newly-found witnesses offer directly
contrary testimony, presenting an issue of veracity.
If the jury should find their testimony persuasive, a
verdict for the defendants might still be returned, but
it would have to be based upon different grounds from
those on which the first one rested.

The considerations upon which it must be decided
whether the plaintiff showed sufficient diligence to en-
title him to a new trial on the ground of the discovery
of this evidence are somewhat complex. The new wit-
nesses are Frank O. Hoff, his wife and daughter. The
affidavits in support of the motion allege these facts:
Hoff and his wife and their daughter were living near
the dam at the time of the flood, as tenants of the de-
fendants. When the plaintiff began looking up the
evidence in his case, he knew that Hoff lived near the
dam. He believed that Hoff might know something
as to when the dam went out, and made search for him,
finding him at Goddard, to which place he had moved.
The plaintiff asked him what he knew as to when the
dam went out and matters connected therewith. Hoff
refused to tell him. The plaintiff regarded Hoff as
hostile to his interests, but intended to subpœna him.
Several months before the trial Hoff removed from the
county, and the plaintiff did not know until the pre-
liminary statement of counsel at the trial that the de-
fendants claimed that the dam did not go out until
after five o'clock. The trial began November 2, and
ended November 11, 1911. On November 5 the plain-
tiff learned that Hoff had a sister living at Viola, and
was told by her that Hoff was living near Cherryvale;
he was unable to pursue the inquiry until after the
verdict had been rendered. Immediately thereafter the
plaintiff went to Cherryvale, but was unable to find
Hoff or his residence. "After great difficulty and dili-
gent search" (no particulars of which are given) the
plaintiff found Hoff in a small town six miles north of

Neodesha (the date is not stated). He then learned what Hoff and the other two witnesses could testify to.

The defendants filed affidavits tending to show that Hoff and his family connections were so well known in Goddard that an inquiry there would readily have disclosed his residence, and that Hoff had given a statement to the defendants shortly after the flood that is inconsistent with his present testimony. They also introduced oral evidence contradicting Hoff's affidavit as to what took place on the day of the flood. Witnesses for the defendants also testified orally as to what had been known concerning Hoff's residence.

The denial of the motion for a new trial means the final defeat of the plaintiff by the verdict of a jury who heard no evidence in his behalf upon a vital question in the case. The granting of the motion leaves the matter to be heard by a new jury in the light of all the evidence now procurable on both sides, and subjects the defendants only to the inconvenience of another trial, if their view of the facts is finally upheld. The court reaches the conclusion that sufficient diligence is shown to require the granting of the motion.

The jury found that the storm of May 31 was an extraordinary one, extending in its sweep over several townships. It is suggested that this finding compels a judgment for the defendants irrespective of when the dam went out. The use of the term "extraordinary" in characterizing the storm is not conclusive. The test (as the court properly instructed) is whether reasonable diligence required it to be anticipated and guarded against.

Complaint is made of an instruction to the effect that in building the dam the defendants were not bound to take into consideration conditions further down the stream. It seems clear that no actual prejudice resulted, but the language may have been so broad as to be subject to misapprehension. It is hard to see how conditions below the dam could affect the pressure

it would have to withstand, but if such conditions could arise they should doubtless be taken into account.

The judgment is reversed and a new trial ordered.

MASON, J. (dissenting): I think the plaintiff had notice of the importance of Hoff's testimony when Hoff refused to tell him what he knew as to when the dam went out. I am inclined to believe that a reasonably diligent inquiry would have revealed Hoff's whereabouts before the trial. But at all events I think under the circumstances the plaintiff should have informed the court, before the case was submitted to the jury, of what he knew concerning Hoff, and should have asked time to produce him, especially when, on the third day after the trial was begun, and the sixth before it was ended, he saw and talked with Hoff's sister as to his residence. In allowing the case to go to the jury without saying anything about this feature of the matter the plaintiff took his chance of winning with the evidence at hand. I think the trial court's decision that due diligence was not shown should not be disturbed.