No. 34,925

R. M. Sawhill, *Appellee*, v. The Casualty Reciprocal Exchange and Leo Hubert, *Appellants*.

(107 P. 2d 770)

Opinion filed December 7, 1940.

*Charles A. Walsh,* of Concordia, *C. W. Burch, B. I. Litowich, La Rue Royce, L. E. Clevenger, E. S. Hampton* and *R. E. Haggart,* all of Salina, for the appellants.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, *Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action for damages to plaintiff's automobile and for personal injuries he sustained in a collision of his automobile with the truck owned and driven by the defendant, Leo Hubert, which collision was alleged to have resulted from defendant's negligence. By answer and cross petition the defendant Hubert sought similar damages from plaintiff, alleging the collision was caused by his negligence. The jury answered special questions and returned a general verdict for plaintiff. Defendants have appealed.

The collision occurred in the northeast quarter of the intersection of two township highways which had been graded and which had dirt surfaces. Directly east and west of the intersection were culverts across the east-and-west roads, their surfaces level with the highway. At the north and south ends of these culverts were cement abutments about eight inches thick and three feet high. These were in the shape of an L and extended about four feet along the north-

and-south road and eight or ten feet along the east-and-west road. The traveled road space between them was from 26 to 28 feet.

Plaintiff, engaged in the real estate and insurance business, owned and was driving a Chevrolet sedan north. The defendant, Leo Hubert, a contract carrier for hire, owned and was driving a Plymouth half-ton truck east. His insurance carrier was joined as a defendant. The truck was loaded with four tractor wheels. John Le Clair was riding with him. (See *Le Clair v. Hubert,* ante, p. 706, this day decided.) When the motor vehicles came to rest after the collision plaintiff's car, facing north, was astride the broken-down cement abutment at the northeast corner of the intersection. Plaintiff was unconscious on the car seat and was taken to a hospital. At the trial he was unable to give any testimony as to how the collision occurred. Defendant's truck, headed northwest, was standing in the highway a short distance west and to the north of plaintiff's car. Le Clair and Hubert were lying on the east shoulder of the north-and-south road a few feet in front of plaintiff's car. Both were injured. They were able to get up soon, but were confused as to where they were and what had happened. Two of the tractor wheels were lying in the north-and-south road a short distance south of the intersection.

Witnesses who reached the scene of the collision soon after it occurred, testified there were tracks of the tires, indicating plaintiff's car had been pushed sideways to the north and east against the cement abutment. Plaintiff's car had been struck on the left side, with the greatest force apparently striking it directly in front of the door, the damage to the car extending both forward and back of that. It also was damaged on the right side, where it had struck the cement abutment with sufficient force to break it down. Hubert's truck was damaged on the right side, and mostly at the right front part of the truck.

There was evidence also on plaintiff's behalf as to the extent of his damages, but this need not be detailed, since no complaint is made of the amount of the verdict if plaintiff is entitled to recover.

Appellants argue that their demurrer to plaintiff's evidence should have been sustained. It is true, as argued on their behalf, the simple fact a collision occurred and someone was injured or some damage done, standing alone, will not support a verdict. There must be substantial, competent evidence of defendant's negligence which caused the injury. (*Hendren v. Snyder,* 143 Kan. 34, 53 P. 2d 472; *Crowe*

*v. Moore,* 144 Kan. 794, 62 P. 2d 846.)   It also is true that when plaintiff rested his case no one had testified who had been an eye-witness to the collision.   But the testimony of eye-witnesses is not always essential.   Evidence of physical facts and circumstances may be sufficient.   Here there was substantial, competent evidence that the collision occurred in the northeast quarter of the intersection, a place where plaintiff, driving north, had a right to be, and where the defendant Hubert, driving east, should not have been.   There also was evidence that the right front corner of defendant's truck struck the side of plaintiff's car with such force as to drive the car diag-onally into the cement abutment, breaking it down.   We think this evidence sufficient to have sustained a finding by the jury that the collision and resulting damages to plaintiff resulted from defendant's negligence.

Defendants did not stand on the demurrer to plaintiff's evidence. The defendant Hubert testified that, traveling east on the highway approaching the intersection, he had gone down an incline, but the road had leveled off about 500 feet west of the intersection; that he was moving about twenty-five miles per hour, when he took his foot off the accelerator about 150 or 200 feet west of the intersection; that he looked north and south, but never saw plaintiff's car because of weeds and hedge trees; that he never applied his brakes and never sounded his horn.   He did not remember about the collision; he had no recollection of what occurred there, or immediately afterward. He regained consciousness at the hospital.

Le Clair testified that as defendant's truck came down the grade from the west its speed accelerated to about twenty-five miles per hour; that where the road had leveled, about 150 or 200 feet west of the intersection, Hubert took his foot off the accelerator and the truck slowed a little; that as the truck entered the intersection the witness looked to his right to see down the road and saw a car and a cloud of dust forty-five or fifty feet south of the intersection, "and I never any more than seen that until I closed my eyes, and that is when we hit; there was just a great impact."

Answering special questions, the jury found Hubert looked north and south for approaching cars but once, and that was when he was 150 to 200 feet west of the intersection; that his truck entered the intersection at twenty-five miles per hour; that he did not apply his brakes, nor give any warning of his approach, and that he did not exercise ordinary care in driving into the intersection.   They further

found the collision took place in the northeast quarter of the intersection. These findings are all supported by the evidence, and when taken together convict Hubert of negligence.

The jury answered "Do not know" to special questions asking at what speed plaintiff's car entered the intersection; at what point in the north-and-south road was plaintiff's car when the front wheels of defendant's truck entered the intersection; did plaintiff reduce his speed before he drove into the intersection; did both cars enter the intersection at the same time, and if not, which car entered first. Appellants contend that the answer "Do not know" indicates the jury was not dealing fairly with the evidence. The point is not well taken. We find no evidence in the record from which the jury could have answered any of those questions intelligently. It is futile, of course, to ask questions of a jury which cannot be answered from the evidence. (*Foley v. Crawford,* 125 Kan. 252, 260, 264 Pac. 59.)

The jury was asked and answered a question as follows:

"Did plaintiff exercise ordinary care in driving into the intersection at the rate of speed he was driving, taking into consideration the distance he could see other cars approaching the intersection from the west? A. Do not know."

Appellants argue the question and answer required the court to sustain their motion for judgment on the answers to the special questions notwithstanding the general verdict. The point is not well taken. Defendants had alleged plaintiff's negligence. The burden was on them to prove it. The question was designed to establish plaintiff's negligence. By its answer the jury did not find such negligence. In other words, it is a negative answer, and is against the party on whom was the burden of proof of the issue involved in the question.

Appellants further argue that the court erred in not sustaining their motion to set aside the answers of the jury to some of the questions on the ground that they were evasive and not sustained by the evidence. As to most of these, as we have pointed out, it was futile to submit them to the jury. Other answers complained of by appellants were sustained by evidence.

This is largely a fact case, determined by the jury's findings, which were approved by the trial court. We find no error in the record. The judgment of the trial court is affirmed.