No. 35,361

Fenton W. Blake, *Appellee*, v. The National Mutual Casualty Company, Y. A. Hinman, Jr., doing business as Hinman Super Service, and Bruce Heniger, *Appellants*.

(124 P. 2d 478)

Opinion filed April 11, 1942.

*Charles L. Hunt*, of Concordia, argued the cause, and *Frank C. Baldwin*, of Concordia, was on the briefs for appellants.

*LaRue Royce*, of Salina, argued the cause, and *Lee R. Stanford, Marvin O. Brummett*, both of Concordia, and *C. W. Burch, B. I. Litowich, L. E. Clevenger, E. S. Hampton* and *R. E. Haggart*, all of Salina, were on the briefs for appellee.

The opinion of the court was delivered by

Allen, J.: The plaintiff brought the action to recover damages for the death of his wife resulting from an automobile collision.

The collision occurred August 16, 1940, on U. S. highway No. 24 a short distance east of Glasco in Cloud county. The highway runs due east and west and is practically level. The accident occurred west of a narrow bridge in the highway. Plaintiff's wife was driving a pick-up truck easterly on the highway. She was alone in the truck. At the same time one Heniger, driving a Hinman oil transport in the opposite direction, collided with the pick-up truck, resulting in the death of Mrs. Blake.

The oil transport and trailer driven by Heniger were owned by the defendant Hinman. The defendant, The National Mutual Casualty Company, is the insurance carrier for Hinman. Hinman had a private carrier permit issued by the Kansas Corporation Commission.

The petition alleged that Heniger was driving the transport at

an unlawful, high and dangerous rate of speed—about 50 miles per hour, and at a speed, considering the road and traffic, which was highly dangerous to the life and limb of other persons using the highway. As the transport approached the bridge, Heniger, driving the transport, reached the bridge first, but as he approached it he drove from his right or north side of the pavement which was 16 feet, 2 inches wide, across the center of the pavement and to such a position and at such speed that Mrs. Blake was unable to stop the truck she was driving or drive the truck to any other position to avoid collision. The result was that the front end of the transport struck the Blake pick-up truck with such force that the truck was totally demolished and Mrs. Blake instantly killed.

The specific acts of negligence charged are:

"(a) In driving and operating said transport at an excessive, dangerous and unlawful rate of speed;

"(b) In driving said transport on the left or wrong side of said road and toward and into the truck being operated by the said Ruth V. Blake;

"(c) In failing to steer said transport away from the truck then being operated by the said Ruth V. Blake;

"(d) In failing to look out for the truck in which the said Ruth V. Blake was approaching;

"(e) In failing to apply the brakes or otherwise control the speed or direction of said transport in time to avoid striking said truck; and

"(f) In failing to reduce the speed and direction of said transport so as to avoid striking the truck being operated by Ruth V. Blake when the defendants saw or should have seen that by their conduct and actions they had placed her in a position from which she was unable to extricate herself which they could have done by the use of ordinary care."

Plaintiff alleged that the transport was approximately eight feet wide and that the defendants knew or should have known that in driving the transport south of the center of the highway it would obstruct or strike vehicles approaching from the opposite direction and that on account of concrete abutments on the bridge it would be impossible for vehicles approaching from the west to turn off the paved part of the highway to avoid being struck and would place drivers of approaching vehicles in fear for their lives, but that notwithstanding this knowledge on defendants' part the defendant driver as agent and servant willfully, wantonly, negligently and with reckless disregard for the safety and well-being of other drivers, drove the transport with a load of 3,400 gallons of gasoline from the north side of the pavement to the middle of the highway as he approached and crossed the bridge and struck the pick-up truck op-

erated by Mrs. Blake; that the transport was being operated south or left of the center of the highway at an excessive speed under the conditions then and there existing, and that Mrs. Blake, despite her efforts to do so, was unable to avoid the collision.

All defendants answered with a general denial, but admitted formal allegations in the petition, including the death of Mrs. Blake as a result of the collision, but averred that her injuries and death were proximately caused by her own negligence and want of due care or were the result of unavoidable accident.

At the trial the testimony of a number of persons who visited the scene of the accident shortly after the collision was introduced. The testimony concerned the highway, the bridge, location of the vehicles and their condition and marks on the pavement. Photographs were taken—these were identified and introduced. Measurements were taken and testimony of the witnesses who took the measurements was introduced. Testimony of the physical surroundings was given in great detail. However, no eyewitness of the collision was produced.

At the close of plaintiff's evidence, the defendants demurred to the evidence on the ground that the evidence failed to prove or tended to prove a cause of action in favor of the plaintiff against defendants. In sustaining the demurrer the court made the following statement:

"THE COURT: I might say that this is a rather painful question to pass on, but I have finally made up my mind that this evidence does not get much beyond conjecture as to how the accident happened; that it is consistent, in the judgment of the court, with pure accident; it is consistent with contributory negligence on the part of the plaintiff's decedent, and while it might, in the case, to some extent, indicate negligence on the part of the driver of this vehicle, the transport, nevertheless it seems to the court that that is conjectural, and it being circumstantial evidence, it seems to the court to be consistent with different theories than those advanced by the plaintiff. Therefore the demurrer will be sustained."

The plaintiff filed a motion for a new trial which later was amended to include the ground of newly discovered evidence. In support of the motion, the following affidavit was offered:

"C. D. Plamann, of lawful age, being first duly sworn on oath, states:

"That he is a resident of Saline county, Kansas, that his true post-office address is 301 West Elm, Salina, Kansas.

"That on the 16th day of August, 1940, he had occasion to be driving from Concordia, Kansas, to Glasco, Kansas, by way of U. S. 81 and 24; that as he

approached the west intersection of U. S. 81 and 24 approximately 18 miles south of Concordia he saw the Hinman Super Service Gasoline Transport Truck some distance ahead of him going west on U. S. 24 towards Glasco, Kansas; that at that time he was driving a 1938 Plymouth coupe and that he was driving between 50 and 55 miles per hour on the level road at that time; that he followed the Hinman transport truck without gaining on it and was approximately the same distance behind it when the collision between the Hinman transport truck and the Fenton Blake pick-up truck driven by Ruth Blake, now deceased, was had; that the truck had driven between 50 and 55 miles per hour on the level and perhaps faster on the down grade from the distance he first sighted it to the point of collision, which was approximately 5 or 6 miles, that is from the Downey station 18 miles south of Concordia, Kansas, to the point of collision.

"Affiant further states that the Hinman transport truck did not slow up any prior to the actual collision and that it would be his judgment that the transport truck was going in the neighborhood of 50 to 55 miles per hour at the time of the collision.

"Affiant further says that he saw the Blake car approach the point of collision and it was on its right side of the road.

"Affiant further states that he examined the marks in the road made by the Hinman transport truck and the marks in the road made by the Blake pick-up truck; that from those marks he can say that the Blake pick-up was on its right side of the road at the time of the collision and that the collision was occasioned by the Hinman transport being driven on the wrong side of the road and at an excessive rate of speed, to wit: from 50 to 55 miles per hour."

The journal entry, after reciting the action of the court in sustaining the demurrer to plaintiff's evidence, further states:

"And now on this 5th day of June, 1941, the same being one of the days of the said April, 1941, term of court, the parties appear as above and the plaintiff presents his motion duly and timely filed herein for a new trial and offers and introduces evidence upon the ground of newly discovered evidence set forth in said motion. The defendants object to certain parts of the affidavit offered in evidence, which objection is by the court sustained. Further argument is had upon said motion and the court, being fully advised in the premises, finds that the affidavit of Mr. C. D. Plamann, offered and introduced in evidence with the exception of the portions stricken out by the court, constitutes newly discovered evidence material to the plaintiff, which the plaintiff could not with diligence have produced at the trial and that a new trial should be granted for that reason.

"It is thereupon by the court ordered that the order of May 1, 1941, sustaining defendant's demurrer to plaintiff's evidence be set aside and a new trial granted hereon on the sole ground of newly discovered evidence."

In sustaining the motion for a new trial, the court stated:

"THE COURT: The demurrer to plaintiff's evidence was sustained by the court on the theory that there was no sufficient proof of negligence to raise a

jury question. Now, by the introduction of the newly discovered evidence which has been offered here this morning, it seems to me that there is some direct proof of negligence. Now then, whether or not this direct proof of negligence, exceeding the speed limit laid down by statute, is the proximate cause of the collision and consequent injury, it seems to me is purely a jury question, and for that reason I think that I must grant a new trial and set aside the demurrer which was sustained on May 1, 1941."

This appeal is from the order of the court sustaining the motion for a new trial. Defendants assign as error (1) the ruling of the court in refusing to strike out certain testimony of the witness Beardmore, (2) in admitting in evidence the affidavit of Plamann in support of the motion for a new trial, and (3) in granting a new trial on the ground of newly discovered evidence.

We have given careful consideration to the forceful argument of defendants based on the errors assigned. In the view we take of the appeal it will be unnecessary to extend the opinion with a review of the points debated.

In the case of *City of Sedan v. Church*, 29 Kan. 190, it was stated:

". . . Trial courts are invested with a very large and extended discretion in the granting of new trials; and new trials ought to be granted whenever in the opinion of the trial court the party asking for the new trial has not in all probability had a reasonably fair trial, and has not in all probability obtained or received substantial justice, although it might be difficult for the trial court or the parties to state the grounds for such new trial upon paper so plainly that the supreme court could understand them as well as the trial court and the parties themselves understood them. . . . The supreme court will very seldom, and very reluctantly, reverse a decision or order of the trial court which grants a new trial. A much stronger case for reversal must be made when the new trial is granted than where it is refused. . . ." (pp. 191, 192.)

In *Hawks v. Railway Co.*, 100 Kan. 529, 165 Pac. 275, it was held as stated in the syllabus:

"Where a new trial is granted after a verdict for the defendant, this court will not ordinarily undertake, upon an appeal from such order, to determine whether the plaintiff failed to make a prima facie case, inasmuch as the trial court may have thought a new trial advisable even if that were true, regarding the failure as excusable and remediable."

In *Ireton v. Ireton*, 62 Kan. 358, 63 Pac. 429, it was stated:

"Upon an application for a new trial because the evidence does not sustain the verdict, it is the duty of the trial court, though not of an appellate court, to weigh the evidence, although conflicting, and if the verdict is clearly against the weight of the evidence and does not meet the approval of the court, it should be set aside." (Syl. ¶ 1.)

In *Simon v. Simon,* 69 Kan. 746, 748, 77 Pac. 571, the court stated:

". . . We are not at liberty to presume that the trial court committed error in granting a new trial. It may rightfully exercise a large discretion in the matter of granting or refusing a new trial, and this court will not review its ruling thereon unless satisfied that it was wholly unwarranted and an abuse of its discretion (*Investment Co. v. Hillyer,* 50 Kan. 446, 31 Pac. 1064; *Ireton v. Ireton,* 62 id. 358, 63 Pac. 429); particularly in a case where it is claimed that the court committed error in granting a new trial."

See, also, *Hiltabidle v. Bradburn,* 110 Kan. 623, 204 Pac. 707; *Turner v. City of Wichita,* 139 Kan. 775, 781, 33 P. 2d 335; *American State Bank v. Richardson,* 140 Kan. 555, 38 P. 2d 96.

We think the evidence was newly discovered within the meaning of the statute, and that reasonable diligence was shown by plaintiff in discovery of such evidence. The petition charged that the defendant was guilty of negligence in operating the transport at an excessive, dangerous and unlawful rate of speed, and in driving the transport on the wrong side of the road. At the trial no eyewitness of the tragedy was produced, and it is evident the trial court in sustaining the demurrer to plaintiff's evidence took the view that the physical facts detailed in evidence did not meet the standard of proof specified in *Sawhill v. Casualty Reciprocal Exchange,* 152 Kan. 735, 107 P. 2d 770. Through diligence the plaintiff has unearthed an eyewitness, unknown at the time of the trial, who states the transport was traveling at a speed of 50 and 55 miles an hour—that it did not slow up any prior to the collision, and that the Blake car, as it approached the point of collision, was on its right side of the road. We feel warranted in saying that if the statements made by Plamann were given in evidence and believed by the jury, such evidence would probably produce a different result. Upon consideration of the entire record, we cannot say there was an abuse of discretion on the part of the court in granting a new trial.

The judgment is affirmed.

HOCH, J., not participating.