No. 43,100

THE WOODS-RINGSTAFF LUMBER COMPANY, a co-partnership, composed of R. C. WOODS, E. E. WOODS, MURIEL LOUGH WOODS, and W. F. RINGSTAFF, *Plaintiff*, and R. C. WOODS, Surviving Partner of the co-partnership named above as plaintiff, *Intervening Plaintiff*, and THE WOODS-RINGSTAFF LUMBER COMPANY, a co-partnership, composed of R. C. WOODS, E. E. WOODS, MURIEL LOUGH WOODS, Substituted Plaintiff, *Appellees*, v. HAROLD E. POND, GOLDA M. POND, *Appellants*, WAYNE LINE, d/b/a Line Supply and Construction, ROBERT LOUGH WOODS, Executor of the Estate of O. H. Woods, Deceased, DOROTHY WOODS MIZE, ROBERT LOUGH WOODS, MARIAN WOODS, OSCAR HARRY WOODS, JUNIOR, *Defendants*.

(382 P. 2d 282)

Opinion filed June 8, 1963.

*Tom Crossan,* of Independence, argued the cause, and was on the briefs for appellants.

*W. C. Mitchell,* of Cherryvale, argued the cause, and was on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This was an action to foreclose a subcontractor's lien for materials used on real estate. (G. S. 1949, 60-1403.) Trial was by the court and judgment was rendered for the plaintiff lumber company, and the defendants Pond have appealed.

This case was here previously. (*Woods-Ringstaff Lumber Co. v. Pond,* 188 Kan. 369, 362 P. 2d 615.) No further reference is necessary to that appeal other than to note that it was held the district court erred in denying the defendants the right to file amended answers.

The pertinent facts in this appeal are summarized: Defendants Pond contracted with Wayne Line, d/b/a Line Supply and Construction, to make certain repairs to a factory building. The agreed price between Line and the defendants for the repairs was $13,000. Line purchased building materials from plaintiff, Woods-Ringstaff Lumber Company, for use on the defendants' building, the last purchase purportedly being made on December 23, 1957. The defendants, partly through subsequent agreements with Line and partly because of overcharges made by him, paid Line the sum of $18,000 for the repairs.

Line failed to pay the lumber company for the materials purchased. On February 21, 1958, the plaintiff lumber company filed a materialman's lien for the amount of the materials purchased by Line for use on the defendants' building. Notice of the lien was personally served upon the defendants.

On October 21, 1958, Line filed a petition for bankruptcy and sought discharge from all his debts including those of the plaintiff lumber company. The plaintiff did not file a claim in bankruptcy

against Line for the amount of the materialman's lien involved, but it did file a claim for $790.24 on another entirely different account which had no relation to the lien claimed, and was for materials not used on the Pond building.

On January 19, 1959, Line received a discharge in bankruptcy.

On February 16, 1959, the lumber company commenced the instant action against the defendants and Line, d/b/a Line Supply and Construction. Prior to trial of the case, an order was made granting Line judgment on the pleadings based upon his discharge in bankruptcy. The appellants Pond are hereafter referred to as the defendants.

In the lumber company's lien statement affidavit and in all subsequent petitions filed in the district court, the various plaintiffs, as hereafter detailed, alleged under oath that the last material furnished by the lumber company which was used on the defendants' building was furnished on December 24, 1957. The parties concede that if the last material was furnished at any time prior to December 23, 1957, the lien statement was not timely filed; also, that December 22, 1957, was Sunday.

When the action was first commenced the Woods-Ringstaff Lumber Company was a partnership composed of R. C. Woods, E. E. Woods, O. H. Woods and W. F. Ringstaff. After the action was filed, it developed that the partnership had been dissolved prior to the filing of the action by the death of O. H. Woods. Subsequently, an amended petition was filed by a different or second Woods-Ringstaff Lumber Company which alleged the partners were R. C. Woods, E. E. Woods, Muriel Lough Woods and W. F. Ringstaff. Thereafter, and on April 10, 1959, W. F. Ringstaff died and the second partnership was dissolved by his death. The probate court appointed R. C. Woods as surviving partner to take over and liquidate the affairs of the partnership. Woods as surviving partner, filed a petition as an intervening plaintiff alleging that he was a proper person to bring the action.

The defendants filed answers to the petitions of plaintiff (the second Woods-Ringstaff Lumber Company) and to the intervening plaintiff. The plaintiff lumber company and intervening plaintiff filed replies and demurrers to the answers.

The surviving partner wound up the affairs of the second partnership by selling the interest of the deceased partner (W. F. Ringstaff) and all of the original assets to a newly formed partnership

(the third Woods-Ringstaff Lumber Company composed of R. C. Woods, Muriel Lough Woods and E. E. Woods), and he asked the court by motion which was sustained, to substitute the newly formed partnership as plaintiff. The substituted plaintiff filed a petition which was later amended because of a mistake, and the defendants filed their answer thereto. The substituted plaintiff filed its reply to the separate answer which contained a special demurrer to paragraphs 9, 10, and 24 of the answer. The reply denied all allegations in the answer except those contained in paragraphs 9, 10, and 24. On September 9, 1961, the court overruled the substituted plaintiff's demurrer and no appeal was taken from that order.

Paragraph 9 of the defendants' answer alleged that the assignments of the lien statement and claim were not in conformity with G. S. 1949, 60-1404. Paragraph 10 alleged that the third Woods-Ringstaff Lumber Company was not the real party in interest in the action, and paragraph 24 alleged that because of its conduct in regard to the Line bankruptcy case in the United States District Court the Woods-Ringstaff companies were barred from claiming any lien upon the defendants' property or recovering from them.

The defendants' answer further alleged that the purported lien statement was not filed within 60 days from the date the last material was furnished by any Woods-Ringstaff Lumber Company for use on their premises; that it was not properly itemized and failed to conform to the provisions of G. S. 1949, 60-1403; that defendants had fully paid Line for his labor and material; that the defendants were not indebted to any plaintiffs, and that a part of the money paid Line by defendants was paid by him to the Woods-Ringstaff Lumber Company which was applied by the lumber company in payment of other Line accounts. The answer denied that Line was the agent, servant or employee of defendants or that he was authorized to incur any indebtedness against them or their real estate, or that there was ever any privity of contract between any of the plaintiffs and the defendants.

With the issues thus joined the case proceeded to trial. The three partners testified that they had no personal knowledge of the details of the lien claimed, but testified as to the organization and dissolution of the various Woods-Ringstaff Lumber Companies. R. C. Woods testified there was never any written assignment of the lien in question and that no entry was made of any transfer or

assignment of the lien on the lien docket in the clerk of the district court's office.

L. E. Wilson, the manager of the lumber company, testified he had no personal knewledge as to when the last material was furnished except for delivery ticket No. 09384 dated December 23, 1957, which was for one $1.28 sack of cement which Line later testified was Portland cement. Wilson further testified that he did not have personal knowledge of every transaction with Line and that the reason the last item furnished Line for use on the defendants' property was stated in the verified lien statement to be December 24, 1957, was that tickets for a particular day were often written in the ledger the following day and evidently the sack of Portland cement was purchased on December 23, 1957, and entered in the ledger on December 24, 1957.

Apart from delivery ticket No. 09384 which was admitted in evidence, the plaintiffs' entire case rested upon Line's testimony. Having alleged in its lien statement and in all its pleadings that the sack of Portland cement was furnished and used on December 24, 1957, the substituted plaintiff then sought to prove that it was furnished and used on December 23, 1957, the only day left which would bring the purchase within the 60 day period prior to the filing of the lien statement.

Line testified for the plaintiff and for the defendants, and was recalled by the plaintiff on rebuttal. It was from his testimony that the defendants first heard the plaintiff's claim as to the exact date and use of the sack of Portland cement. He testified the Portland cement was purchased and used to lay a four-inch tile drain on December 23; that the tile for the drain was purchased on December 18, and the trench was dug on that date; that four bags of masonry cement (as distinguished from Portland cement) were purchased from the lumber company on December 19 (as shown in the lien statement); that the laying of the tile was delayed because the ditch was dug in solid rock; that a combination of masonry cement and Portland cement was used in laying the tile; that on December 23, there remained to be laid 20, 25 or 30 pieces of three-foot tile; that the last thing he bought was one sack of Portland cement on December 23, which was used to complete the drain on December 23, although on one occasion Line became confused and stated it was the 24th, and on another occasion he stated he left the job on

Saturday, December 21. Thus, the so-called last sack of Portland cement became irrevocably linked to the four-inch tile drain and in order to recover the plaintiff was required to prove that at least a portion of the drain was laid on December 23rd or 24th.

During the progress of Line's work for the defendants he submitted time sheets showing the labor and materials used each day. Defendants' Exhibit P was the time sheet for December 19, which showed the tile drain was laid on December 19. Defendants' Exhibit U was the time sheet showing the labor and materials furnished on December 14th, 21st, 23rd and 24th, and it failed to show any Portland cement or any other cement furnished or used on December 23rd or 24th, and failed to show the laying of any sewer line on either of those two days. Line testified that defendants' Exhibits P and U were true and accurate time sheets. In passing we note that the lien statement itself showed the four-inch drain tile was purchased on December 18, and four bags of masonry cement were purchased on December 19. Further, there was no purchase of Portland cement shown on the lien statement except the disputed item dated December 23.

At this juncture we note the sequence of the series 09000 delivery tickets which were a part of plaintiff's Exhibit 6. The numbers and dates of those delivery tickets are as follows: December 18, 1957, ticket No. 09478; December 19, 1957, ticket No. 09489, and December 23, 1957, ticket No. 09384 (the ticket for the disputed sack of Portland cement). Thus, ticket No. 09384 would logically have been made out prior to those of December 18th and 19th. This fact is particularly significant in view of Pond's stout insistence that the drain tile was laid in its entirely on December 19, and in view of Line's testimony that the laying of the tile commenced on December 18.

Line's rebuttal testimony is even more illuminating. He testified that the last item of material was purchased and used on Monday morning, December 23, in laying the last 25 feet of drain tile. He stated that a portion of the tile had been laid December 18th or 19th, but that he did not finish on those dates and did not cover the tile because he discovered the ditch had to be dug in solid rock. On cross examination Line repudiated his testimony given in the plaintiff's case in chief and stated he did not use the sack of cement on December 24th but used it on the 23rd. He admitted the work sheet showed the last day of work on the four-inch tile

was Thursday, December 19, and that was the last time the drain tile was mentioned in any report. He further stated that there were 20 feet not completed on December 19; that he bought masonry cement at the time he bought the tile for the drain; that he bought the Portland cement to complete the last 20 feet and the only inference tenable from his testimony was that masonry cement was used on the first portion of the drain and the Portland cement was used on the last 20, 25 or 30 feet.

Pond vigorously denied any work was done on the tile drain on December 23rd or 24th, and denied that a sack of Portland cement was furnished or used on either of those dates. He carefully explained why the sewer line or any portion of it was not laid on December 23rd or 24th, and testified he was present and that no Portland cement or any other type of cement was furnished or used on either of those dates. All the testimony was that the 24th was the last day anyone worked on the job.

The district court found that one sack of cement for which a charge of $1.28 was made was furnished on December 23, for use in the Pond building and was so used, and rendered judgment that the plaintiff was the holder of a valid sub-contractor's materialman's lien on the property described in the amount of $3,227.83, and the same was subject to foreclosure in that amount.

Line's testimony so shocked and surprised the defendants that after judgment was rendered they immediately conducted an exhaustive investigation of the sewer line. Between the filing and the hearing of the motion for a new trial, the defendants secured evidence which utterly demolished Line's testimony.

On December 20, 1961, the defendants had the sewer line reopened in the presence of the county engineer of Montgomery County, a commercial photographer, an attorney, and in their presence. The drain was first opened down to the tile and it was inspected in place. At the joints of the tile there was a cement like substance. Under the supervision of the county engineer workmen took samples of the material between each joint along the entire line. The tile drain ran in a southeastern-northwestern direction and samples taken from the southeast end were kept separate from samples taken from the northwest end. There was no rock formation or solid rock anywhere near the location of the tile drain.

At the hearing on the motion for a new trial the defendants pre-

sented affidavits and oral testimony. One Marquardt testified by affidavit that he operated a bowling alley next door to the Pond premises; that there was a tile drain running from the dock on the north side of the Pond building in a northwesterly direction to the northwest corner of the premises; that the area was used as a parking lot; that he knew of his own personal knowledge the tile drain had never been dug up, opened for inspection, examined or otherwise molested or tampered with until December 20, 1961, when it was uncovered under Pond's direction. Photographs taken showed there was absolutely no rock or rock formation near the title drain. Samples taken of the cement like substance were forwarded to the United States Testing Company, Inc., Tulsa, Oklahoma, and analyzed by V. B. Dorsett. Dorsett, a qualified testing chemist, made careful tests of all samples, and contrary to the statements of Line and observations of the district court, testified that this material was pure Portland cement and there was no masonry cement in it. One Newland testified that he worked on the Pond project in the afternoons of December 23rd and 24th with his bulldozer and there was no trench dug or open ditch on the entire premises while he was there.

In overruling the defendants' motion for a new trial, the district court disregarded the defendants' evidence on the theory that it was merely cumulative. The particular significance of the evidence was it completely disproved Line's testimony that the first portion of the sewer line was laid with masonry cement; it completely disproved his testimony that he used a combination of masonry and Portland cement in laying the tile drain, and that since masonry cement was not used in the tile drain, the physical facts demonstrate that the Portland cement was purchased and used at least as early as December 19, when the drain tile was laid. That evidence, when coupled with the sequence of the delivery tickets, shows that the purchase of the sack of Portland cement must have occurred prior to December 18th or 19th, and that the last item purchased from the lumber company was purchased either December 18th or 19th.

We are of the opinion the evidence offered at the hearing on the motion for a new trial was clearly not cumulative. It contradicted the testimony of the plaintiff and was of a different kind and character from that offered at the trial. It was newly discovered evidence within the meaning of the statute, and as hereafter stated, reasonable diligence was shown by the defendants in discovery of

such evidence. We feel warranted in saying that if the testimony were given in evidence and believed by the court, such evidence would properly produce a different result and would compel the rendering of a judgment for the defendants. (*Haughton v. Bilson,* 84 Kan. 129, 113 Pac. 400; *Davis v. Sim,* 92 Kan. 264, 265, 140 Pac. 851; *Blake v. National Mutual Casualty Co.,* 155 Kan. 201, 124 P. 2d 478.) In the Haughton case it was said:

"The proffered evidence was of precisely the same character, and bore upon precisely the same point, as some that was introduced at the trial by the successful parties, but it was not cumulative thereto, because it was to the contrary effect. It was not corroborative of the evidence of the prevailing parties, but contradictory. Of course a losing party may not demand a new trial because he has discovered a way in which to contradict his own witnesses. (29 Cyc. 899, note 52.) But if he has been defeated by reason of evidence offered by the adverse party which he has been unable to meet, and afterward discovers witnesses who are able to contradict those of his adversary, his new evidence may not be rejected as cumulative, notwithstanding evidence of the same sort, directed to the same question, was given at the trial. (*The State v. Tyson,* 56 Kan. 686; 29 Cyc. 909, note 82; 20 Cyc. 920, note 8; 3 Encyc. of Ev. 924.)" (l. c. 131, 132.)

The record clearly demonstrates that the defendants were diligent in attempting to secure the facts. They attempted to contact Line prior to the trial and were informed by the attorney who represented him in the bankruptcy case that he lived in Chicago, Illinois, but the attorney divulged no street address. An attempt was made by letter to Line's attorney to obtain his street address, but was to no avail. In any event, Line was not a resident of the state of Kansas and his address was unknown to the defendants. At the trial it developed that Line was a resident of Polas Hills, Illinois. Since he was the only witness relied upon by the plaintiff to show where the item "one sack of cement, December 24" was used, defendants had no way of anticipating what the testimony would be in regard to that item. Moreover, plaintiff mislead the defendants in the lien statement and in the various petitions by stating that the last material was furnished on December 24, although L. M. Wilson testified he knew plaintiff's claim would be that the last material was purchased and used on December 23, and that he possessed this knowledge months before the last petition was filed.

We are of the opinion the district court erred in denying the defendant's motion for a new trial. The new evidence consisted of physical facts and the testimony of disinterested witnesses which

directly contradicted evidence of plaintiff on the vital point at issue and completely demolished and refuted all of the plaintiff's testimony in regard to the date the last material was furnished by the lumber company and the date that material was used on the defendants' property.

Other points have been briefed and argued by the parties but in view of the conclusion heretofore stated it is unnecessary that they be discussed and decided. Our review of the record compels the conclusion that the judgment of the district court must be set aside and a new trial granted the defendants.

It is so ordered.