No. 35,897

L. R. UNDERHILL and PAUL UNDERHILL, *Appellees,* v. BUARD MOTES and SUSIE LACOE MOTES, *Appellants.*

(146 P. 2d 374)

Opinion filed March 4, 1944.

*Ralph H. Noah,* of Beloit, argued the cause for the appellants.
*R. L. Hamilton,* of Beloit, argued the cause for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages for loss of cows due to alleged poisoning and to recover the first half of a pasture rental payment made by plaintiffs to defendants. The defendants appeal.

The appeal is from (1) an order granting a new trial; (2) an order overruling a demurrer of one of the defendants to plaintiff's evidence; and (3) a ruling setting aside a previous order sustaining the demurrer of the other defendant to plaintiffs' evidence.

Appellees and appellants are farmers. L. R. Underhill and Paul Underhill, appellees, are brothers associated in a farming enterprise. They had leased sixty acres of pasture land from the appellant, Susie

Lacoe Motes. The appellant, Buard Motes, is a son of the lessor and Buard supervised the farming operations. Adjacent to the pasture appellants had an alfalfa field. It was appellees' contention Susie Lacoe Motes had furnished poison to kill grasshoppers which were infesting the alfalfa and that appellees' cows ate some of the poison near the pasture fence which separated the pasture from the alfalfa field and that the cows died as a result thereof. Appellant Susie Lacoe Motes filed an answer and cross petition in which she denied liability for loss of the stock and also denied liability to appellees for a return of the first half of the rent she had received for the pasture. She sought to recover the balance or last half of the rent.

We shall first consider appellants' contention the trial court erred in granting a new trial. Separate general verdicts were returned in favor of appellants. The jury also made certain special findings of fact. The trial court was dissatisfied with the special findings and the general verdicts. The court so stated. It will serve no useful purpose to discuss the particular special findings. It is sufficient to say the special answers were not frank. They disclosed prejudice and some of them were directly contrary to the evidence. Furthermore, aside from the special findings, the general verdicts were inconsistent with each other and could not stand. A demurrer of the appellant, Susie Lacoe Motes, had been sustained to appellees' evidence. She therefore remained in the case only on her cross petition to recover the last half of the rental. Although the jury returned a general verdict in favor of the appellant, Buard Motes, which absolved him of liability for damages, the jury did not return a verdict in favor of Susie Lacoe Motes for any money judgment she sought. Manifestly, if neither of the appellants were liable in damages the jury should have returned a verdict in favor of Susie Lacoe Motes for the balance of the rental due. The record also discloses the court was dissatisfied with the trial in other respects. When a trial court is dissatisfied with a verdict it should set aside the verdict. (*Johnston v. Lanter*, 92 Kan. 257, 139 Pac. 1031; *Blake v. National Mutual Casualty Co.*, 155 Kan. 201, 124 P. 2d 478.) It is, of course, well settled that in order to permit a verdict to stand it must have the independent approval of the trial court. (*Motor Equipment Co. v. McLaughlin*, 156 Kan. 258, 133 P. 2d 149.)

Appellants contend that when a trial court grants a new trial and states the reasons therefor, which are not good, the ruling will be

reversed. We have referred only to reasons stated which are unquestionably sound and sufficient. In order to sustain the ruling of the trial court we need, therefore, not consider other reasons discussed by the trial court, assuming they were insufficient.

Appellants concede the granting of a new trial generally had the effect of setting aside the former order sustaining the demurrer of Susie Lacoe Motes. They argue their demurrers should have been sustained for the reason appellees' evidence failed to establish a cause of action against either of them for damages.

Appellees called Susie Lacoe Motes as their own witness. She, in substance, testified:

She leased the sixty-acre pasture to appellees for the pasture season beginning May 1, 1941, and ending November 1, 1941; the land south of the pasture on which the alfalfa was located was farmed in coöperation with her son, Buard; the latter supervised the farm; he received one-half of the crops and she received the other half; they seeded nine acres of alfalfa in the spring of 1941 under the Agriculture Conservation Act; under that act it seemed necessary to protect the alfalfa from grasshoppers; they got the grasshopper poison in 1940 from the Farm Bureau and they used it that season; they used it according to instructions; she obtained and receipted for the poison; Buard did the spreading; she knew it wasn't all used in 1940; they decided to keep what was left over in 1940; she knew the rest was kept over for use in 1941.

It is conceded Buard Motes in July, 1941, scattered the poison which was left over from 1940 and that he scattered it prior to July 20. In his own defense he testified he did not scatter it in chunks and that it was not scattered near enough to the pasture fence to permit the cows in the pasture to reach it through the fence. On demurrer we are, of course, concerned only with testimony offered on behalf of appellees. Those witnesses, in substance, further testified:

Some of the poison was found in chunks and sufficiently near the fence to enable cows in the pasture to reach it; appellees had placed additional cows in the pasture on July 20, 1941; one of those cows died July 24 and three of them died July 25; a veterinarian was called in the forenoon of July 24; he examined one of the cows and concluded she was ill from arsenic poisoning; he returned that afternoon and the cow had died; from the symptoms of her illness he was suspicious of grasshopper poison and directed appellees to make a

search for it; he performed an autopsy on the cow, which confirmed his previous suspicion; the other cows that died had the same symptoms; he was very familiar with the effects of grasshopper poison, having had much experience with it in the treatment of cattle; numerous cattle had died from it in that country; the other three cows had the same symptoms as the cow on which he performed the autopsy; it was his opinion the cows had all died from a killing dose of arsenic which was contained in the grasshopper poison; the arsenic is usually mixed with bran, sawdust and molasses.

Appellees' testimony further, in substance, disclosed:

That any person obtaining grasshopper poison from the Farm Bureau was required to sign a receipt in which such person agreed to use the grasshopper bait in the manner approved in the instructions attached to the sacks of poison bait and that the person receipting therefor agreed to assume full responsibility for its use; Susie Lacoe Motes receipted for the poison; the receipt also provided that the bait remained the property of the U. S. Department of Agriculture until spread and that any surplus remaining at the close of a control season was to be returned to the mixing station; directions for use expressly provided the bait should be scattered so as to fall on the ground in individual flakes, thus eliminating danger of poisoning domestic or wild animals or birds; the danger of scattering it in lumps was clearly emphasized; the person obtaining the poison was warned to keep it away from stock; the cows that died had been brought from another pasture of appellees; none of the cows in that pasture had been ill previously or thereafter; there was no evidence of grasshopper poison elsewhere in the neighborhood; cattle have a craving for grasshopper poison; it was the opinion of the veterinarian the cows had not died from hydrocyanic acid (weed poisoning) but from grasshopper poison which they had eaten from twenty-four hours to two days prior to their death; he explained the reasons for his conclusions.

Appellants state:

"We will concede, for the purpose of the demurrer, that the scattering of the grasshopper poison in chunks near the fence of a pasture containing cattle, or where cattle might be placed is negligence, but we contend the record is entirely barren of testimony showing, or tending to show, that the appellants, or either of them, scattered any grasshopper poison or caused it to be scattered in chunks, or along the fence of the pasture."

The contention with respect to the facts cannot be sustained.

Appellees' testimony was sufficient to take the case to the jury as to both appellants.

The appellant, Buard Motes, also argues his motion for a directed verdict should have been sustained. In the light of what has been stated little, of anything, need be said on that point. He contends he was under no duty to notify appellees the poison had been scattered in the alfalfa field when it was scattered in a proper way.. Whether the poison was properly scattered and whether adequate diligence was exercised in keeping it out of the reach of appellees' stock were questions of fact for the determination of the jury. If the poison was scattered in lumps and was washed down the slope to the pasture fence appellees were entitled to be notified of that fact by appellants in order that they might protect their stock against the unknown and hidden danger until appellants could remove it. These were all matters to be submitted to the jury under proper instructions.

On behalf of the demurrer of Susie Lacoe Motes it is also argued she did not personally scatter or actively participate in the manual operations of scattering the poison. It is true her son, the supervisor of her farm, scattered it. She and her son had agreed the portion of the poison which was left over from 1940 should be stored for use in 1941. Manifestly she could not obtain a deadly poison under an agreement that she would assume full responsibility for its use and then escape liability for loss resulting from its negligent use by asserting she had not personally scattered it. Of course, this court is not determining any question of alleged negligence. We are simply reviewing the ruling on the demurrers. For that purpose appellees' evidence and all reasonable inferences to be drawn therefrom must be accepted as true.

We do not deem it necessary to treat at length the subject of a person's responsibility for the use and control of poisons or other hidden dangerous substances or instrumentalities in his possession. General rules pertaining thereto are treated in various texts. Among them are 20 R. C. L., Negligence, §§ 47, 48, 57, 65 and 67. See, also, statutes pertaining to the use of grasshopper poison. (G. S. 1935, 19-2401, 19-2403, 19-2408.)

We find no error in the rulings complained of and they are affirmed.