No. 36,394

L. R. UNDERHILL and PAUL UNDERHILL, *Appellees*, v. BUARD MOTES and SUSIE LACOE MOTES, *Appellants*.

(165 P. 2d 218)

filed January 26, 1946. Opinion

*Ralph H. Noah,* of Beloit, argued the cause for the appellants.

*R. L. Hamilton,* of Beloit, argued the cause for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages for the alleged poisoning of cows and involved also some rental items. The appeal is restricted to the damage item.

The jury returned a general verdict on the damage feature of the case in favor of defendants and also returned a special verdict.

The defendants appeal first from the order overruling their general demurrer to plaintiffs' evidence. This case was previously here on an appeal involving, among other things, an order overruling defendants' general demurrer to plaintiffs' evidence. We sustained the ruling. (*Underhill v. Motes*, 158 Kan. 173, 146 P. 2d 374.) Material portions of plaintiffs' evidence was narrated in that opinion and reference is here made thereto. A careful review of the precise points of difference between plaintiffs' evidence in the two trials to which appellants direct our attention leads us to conclude the difference is entirely too slight to justify a different ruling. In fact, appellants concede if that were the only ruling complained of the instant appeal would not be here.

Appellants complain primarily of rulings on post-trial motions. The trial court set aside the general verdict in their favor and rendered a judgment for damages in favor of plaintiffs, appellees. The rulings involved the special verdict and motions leveled against it by appellees. The special verdict reads:

"1. What caused the death of plaintiffs' cows? A. Unknown.

"2. Was there any grasshopper poison put out near the pasture by anyone other than Buard Motes? A. No.

"3. If you answer the above question 'yes,' state: (a) Where it was? A. ———— (b) Who put it out? A. ————.

"4. Was the grasshopper poison scattered where it could wash down to or near the fence in reach of plaintiffs' cows? A. Yes.

"5. Was any of said grasshopper poison found near the fence close enough to be in reach of plaintiffs' cattle? A. No.

"6. Do you find that the defendant, Buard Motes, was negligent in scattering the grasshopper poison? A. No.

"7. If you answer the above question 'yes' then state fully in what particular or particulars he was negligent? A. ————.

"8. Do you find that the defendant, Susie Lacoe Motes, was negligent in handling the grasshopper poison? A. No.

"9. If you answer the above question 'yes' then state fully in what particular or particulars she was negligent. A. ————."

In appellees' first motion they asked to have findings No. 1, 5,

6 and 8 set aside on the grounds they were not supported by any evidence and were contrary to the evidence. The motion was sustained except as to finding No. 8. Appellants contend no part of the motion should have been sustained.

We may concede that a review of the cold record before us makes it somewhat difficult to understand why the jury made the three findings, which the trial court set aside, as it did. We cannot say, however, that the jury was compelled to answer them otherwise. For example, the jury was instructed on the subject of due care in the scattering of grasshopper poison in the alfalfa field adjoining the pasture. No error is charged with respect to the instructions on the subject. The jury answered that question by finding No. 6. Under these circumstances neither the trial court nor this court can substitute its judgment for that of the jury. We cannot say there was no evidence to support the finding or that it was contrary to the evidence. Moreover, the finding was consistent with the general verdict.

Touching question No. 1 it was appellees' burden to prove their cows died from grasshopper poisoning as their petition alleged. The jury resolved that contention against appellees by finding No. 1. At least the finding means appellees did not prove that charge to the satisfaction of the jury. The answer was consistent with the general verdict. Appellees, however, insist there was ample evidence the cows died of grasshopper poisoning and no evidence that they died from any other cause. Appellees overlook the fact that while a jury is obliged to consider all evidence, it is not required to believe and accept as true the evidence of a witness, or witnesses, merely because there is no direct evidence to contradict the same. (*Smith v. Lockridge,* 145 Kan. 395, 65 P. 2d 345; *Kallail v. Solomon,* 146 Kan. 599, 72 P. 2d 966; *Johnson v. Soden,* 152 Kan. 284, 287, 103 P. 2d 812.) The last-stated principle also applies to finding No. 5. That finding likewise is consistent with the general verdict. From what has been said it follows the court was not justified in setting aside the three findings of the jury and substituting its own judgment relative to the credibility of the witnesses or the weight to which their testimony was entitled.

Having set aside the findings mentioned the trial court passed on appellees' (plaintiffs') motion for judgment on the remaining findings. It sustained that motion, set aside the general verdict in favor of appellants and rendered judgment for damages in favor

of appellees. Assuming the three answers previously designated properly had been set aside, were appellees entitled to judgment on the remaining findings? We do not think so. It must always be remembered that in the consideration of a question of inconsistency between answers to special questions and the general verdict nothing will be presumed in aid of the special findings and that every reasonable presumption will be indulged in favor of the general verdict. (*Lesher v. Carbon Coal Co.*, 127 Kan. 34, 272 Pac. 155; *Waldner v. Metropolitan Life Ins. Co.*, 149 Kan. 287, 289, 87 P. 2d 515; *Walker v. Colgate-Palmolive-Peet Co.*, 157 Kan. 170, 194, 139 P. 2d 157; *Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, 283, 139 P. 2d 859.) Therefore, unless the special findings clearly overthrow the general verdict the latter must be permitted to stand. (*Taggart v. Yellow Cab Co. of Wichita*, 156 Kan. 88, 131 P. 2d 924; *Walker v. Colgate-Palmolive-Peet Co.*, supra.) In other words, the special findings must be of such a character as to compel the court to set aside the general verdict.

Did the remaining findings compel a different judgment? They probably were consistent with a different judgment but they did not compel a different judgment. Finding No. 4 is merely that the poison was scattered where *it could wash down* to or near the fence in reach of plaintiffs' cows. It is not a finding that it did so. It follows the motion for judgment on the remaining special findings should not have been sustained even though they properly could have been considered as a unit, separate and apart from the other findings. Of course, the findings must always be considered in their entirety with a view of harmonizing them with each other and the general verdict and not with the view of overthrowing the general verdict. (*Montague v. Burgerhoff*, 152 Kan. 124, 128, 102 P. 2d 1031.) And finding No. 6 disclosed Buard Motes was not negligent in scattering the poison.

The trial court was clearly dissatisfied with the general verdict and with some of the special findings and, it would appear, quite properly so. But what was the extent of its power under those circumstances? It was to set them aside and to grant a new trial. (*Ward v. Grant*, 138 Kan. 363, 26 P. 2d 279; *Tritle v. Phillips Petroleum Co.*, 140 Kan. 671, 676, 37 P. 2d 996.) Any other ruling would in reality constitute a substitution of the court's judgment for that of the jury and a denial of the right of trial by jury. (*Walker v. Colgate-Palmolive-Peet Co.*, supra, p. 193.)

The order of the district court overruling defendants' demurrer to plaintiffs' evidence is affirmed. In other respects the judgment is reversed with directions to grant a new trial.