No. 38,764

JOHNSON-SAMPSON CONSTRUCTION COMPANY, INC., *Appellant*,
v. CASTERLINE GRAIN & SEED, INC., *Appellee*.

(252 P. 2d 893)

Opinion filed January 24, 1953.

*James P. Mize*, of Salina, argued the cause, and *W. C. Gould* and *R. R. Mitchell*, both of Dodge City, and *C. L. Clark* and *Jason K. Yordy*, both of Salina, were with him on the briefs for the appellant.

*James A. Williams*, of Dodge City, argued the cause, and *C. W. Hughes* and *Byron G. Larson*, both of Dodge City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: The appeal here is from an order of the district court overruling plaintiff's motion for judgment on the answers to special questions made by the jury notwithstanding their general verdict. We shall speak of the parties as they appeared in the trial court. Each is a Kansas corporation. Plaintiff has its headquarters in Salina and is engaged in the building and construction business. Defendant has its headquarters at Dodge City, where it has an elevator for the handling and storage of grain. It decided to build an addition thereto sufficient to store 340,000 bushels of grain. After some preliminary negotiations, and as of the date of September 6, 1950, the parties entered into a written contract in which plaintiff agreed to furnish material and labor and construct the building for the sum of $108,810, which included the cost of a performance bond required to be given by plaintiff. The contract contained provisions common in such contracts, and with respect to the time of completion contained this clause:

"The contractor shall endeavor to have elevator completed to a point where it will handle grain by November 30, 1950."

From the preliminary negotiations defendant had advised plaintiff of the importance to it of having the building completed by the middle or last of November, this for the reason that in the area

served by defendant a large quantity of maize is grown, the harvest of which begins in November. The plaintiff drew the contract and the specifications for the building and sent them to defendant. There were material omissions in the contract as first drawn, to which defendant called plaintiff's attention. The contract and specifications appear to have been completed to the satisfaction of both parties, with the result that the contract was finally executed September 25, and soon thereafter the work was started. The building was completed so that it could be used for handling grain on December 29, 1950, and it was first used for that purpose on January 2, 1951. The contract provided that certain payments of $10,000 or more each were to be made at stated periods while the structure was being built. Defendant made these payments as called for in the contract in a sum aggregating $100,000. Plaintiff brought this suit to recover the balance of $8,810. Defendant answered admitting that sum had not been paid under the contract and by cross petition alleged that it has been damaged by the failure of plaintiff to complete the elevator so it could handle grain by November 30 in the sum of $8,500.81, and alleged specific acts of negligence or unreasonable delay on plaintiff's part. In plaintiff's reply and answer to the cross petition it was alleged that the delays of which defendant complained were caused by the failure and neglect of defendant and the agencies which were lending defendant money to finance the construction, namely, the Reconstruction Finance Corporation and the Fidelity State Bank at Dodge City.

From the record, which is far from complete, it does appear that defendant, to construct the building, borrowed $100,000 from the Fidelity State Bank at Dodge City, which was furnishing twenty per cent of the loan, and the Reconstruction Finance Corporation, which was furnishing eighty per cent of the loan. That matter was not referred to in the contract executed by the parties, nor in the specifications, nor in the pleadings, other than in plaintiff's reply and answer to the cross petition.

The pleadings were so framed that the only issues left for trial were those formed by the cross petition and the answer thereto, and primarily the issue was whether defendant was entitled to any of the damages, and if so, how much, because the elevator had not been completed so as to handle grain by November 30, 1950. There was a pretrial conference. A full report of that is not set out, but this much was furnished:

"The Court is making a finding here, first, that on the face of it, that the

plaintiff was required under this contract to use due diligence to complete this elevator on November 30, 1950. And if the evidence should show that the elevator was not completed to the point where it would handle grain by November 30, 1950, the defendant will have made out a prima facie case that plaintiff did not use due diligence."

The court's instructions have not been set out in full, but perhaps the pertinent ones are set out and read as follows:

"2. You are instructed that the plaintiff is entitled to judgment against the defendant for the sum of $8,810.00 in this case on its petition. You will then proceed to determine whether or not the defendant is entitled to judgment against the plaintiff on its cross-petition.

"3. You are instructed that the evidence in this case shows that the elevator was not completed to the point where it would handle grain by November 30, 1950.

"4. It is the contention of the plaintiff that it used due diligence in the construction of the storage elevator, and although the same was not completed by November 30, 1950, that the failure to complete it was occasioned by the acts of the defendant in delaying in signing the contract and of the defendant's loaning agencies in failing and neglecting to finally approve the plans and specifications, including the contract, and to advise plaintiff of such approval, and thereby prevented the plaintiff from commencing the construction and from completing the elevator by said date.

"In this connection you are instructed that the burden is upon the plaintiff to show by a preponderance or greater weight of the evidence that it was delayed in the commencement of the construction of said storage elevator by these acts of the defendant, and that it did use due diligence.

"It is the contention of the defendant that any delay in commencing the construction of said storage elevator and in the completion of the same was a result of the plaintiff's own acts in that it did not start construction as soon as it learned that it had been awarded the contract; that plaintiff was incompetent, inefficient and its equipment inadequate; that it did not pay standard wages and changed superintendents; and that defendant was damaged in the total sum of $8,500.81 on account of the plaintiff's failure to use reasonable diligence and to have said storage by November 30, 1950.

"In this connection you are instructed that if you find that the plaintiff did not sustain the burden of proving by the preponderance or greater weight of the evidence that it used due diligence in commencing and constructing said storage, then the burden is upon the defendant to show by a preponderance or greater weight of the evidence that it was damaged thereby and the amount of its damage.

"5. If you find that the plaintiff did not use due diligence as defined in these instructions then you should determine whether or not the defendant was damaged by the failure of the plaintiff to use due diligence in completing said elevator or storage by November 30, 1950, and if you find from the evidence by a preponderance thereof that the defendant was damaged by the failure of the plaintiff to use due diligence as aforesaid, then you should proceed to determine the amount of defendant's damage, and your verdict should be for

the defendant on its counterclaim in such amount as you find he has been damaged, unless you further find that said damage was occasioned by the acts of the plaintiff or its loaning agencies as set out in Instruction No. 9. If you do not find that the defendant was damaged on account of the plaintiff's failure to use due diligence, your verdict should be for the plaintiff on the defendant's counterclaim.

"8. You are further instructed that whatever amount, if any, you find the defendant was damaged under the three items, or any of them, set out in the foregoing instruction, you will total and you will deduct said total amount from the sum of $8,810, the amount for which plaintiff is entitled to judgment on its petition, and return a verdict for the plaintiff in such amount as you find the difference to be.

"9. You are instructed that if you find and believe from the evidence that defendant and the agencies loaning it money to finance this storage elevator caused the plaintiff to be substantially delayed in commencing the construction of this storage elevator, so that its completion to the point where it would handle grain was delayed beyond November 30, 1950, then you will not allow defendant any damages for such delay, and your verdict should be for the plaintiff on the defendant's counterclaim.

The jury returned a general verdict which reads:

"We, the Jury, impaneled and sworn in the above entitled case, do, upon our oaths, find for the defendant on its cross-petition and assess its damages on said cross-petition at $2753.00 DOLLARS, and after deducting said amount from the sum $8,810 due plaintiff leaves a balance of $6056.50, which amount we find for plaintiff."

and answered special questions as follows:

"1. Q. With reference to the building here involved, what do you find was the date: (a) It was completed to the point where it would handle grain? A. 12-29-50. (b) Defendant first used it to handle grain? A. 1-2-51.

"2. Q. Was it reasonable and prudent for plaintiff to decline to commence the actual construction work on this building until: (a) Defendant had signed and returned the written contract to plaintiff? A. Yes. (b) Plaintiff was furnished with Reconstruction Finance Corporation's written approval of the plans and specifications? A. Yes.

"3. Q. What do you find would have been a reasonable time to complete construction of the building to the point it would handle grain from the date of actual start of construction? A. 12 weeks.

"4. Q. Do you find that the defendant caused the plaintiff to be delayed substantially in the commencement and completion of this building to the point it would handle grain? A. Yes.

"5. Q. If you answer No. 4 in the affirmative, state what the defendant did. A. Delay in handling contract and use of plaintiff's crew in other work.

"6. How many days do you find plaintiff was delayed in completing this building to the point it would handle grain by cold weather? A. 3½.

"7. Q. When was the signed construction contract delivered to plaintiff by the defendant? A. 9-25-50.

"8. Q. If you believe the defendant made any contracts with its customers to store sorghum grain or purchase milo maize which defendant intended to place in this building, then state the date defendant: (a) Made the first such contract to store sorghum grain on which it is claiming damages? A. Date unknown. (b) Made the first such contract to purchase milo maize on which it is claiming damages? A. Date unknown.

"9. Q. If you award defendant any damages in setoff by your verdict in this case, then state how much you allowed: (a) Because of loss from grain storage contracts that defendant was not able to fulfill? A. $791.00. (b) Because of additional expense and damage to milo maize stored on the ground? A. $1962.50 (c) Because wheat stored at the Dodge City Air Force base lost grade? A. None."

In due time defendant filed a motion for a new trial and plaintiff a motion "for judgment in its favor on defendant's counterclaim notwithstanding the general verdict in favor of defendant on defendant's counterclaim for the reason that the jury's answers to the special questions submitted by the court compel a judgment in favor of the plaintiff on said counterclaim."

On March 14, 1952, these motions were considered by the court and each of them was denied and judgment was rendered in harmony with the general verdict. Plaintiff timely appealed to this court from that portion of the judgment in which the court "awarded judgment against plaintiff upon the first cause of action set forth in defendant's amended answer and cross petition herein in the sum of $2,753.50, which sum is hereby ordered set off in recoupment against the judgment hereinabove awarded plaintiff upon the first cause of action of its amended petition herein," and from the order denying plaintiff's motion for judgment on the jury's answers to the special questions notwithstanding the general verdict.

No appeal was taken from the order of the court overruling defendant's motion for a new trial. With respect to the special questions, Nos. 1 and 7 need not have been submitted since they were clearly established by the pleadings and evidence. Presumably the jury gave plaintiff credit for the 3½ days in answer to question 6, that plaintiff was delayed by cold weather. There is no contention that was not done. Perhaps there was no evidence by which the jury could answer question No. 8. No question was raised in the trial court, nor has any question been raised in this court with respect to the answers given to the subdivisions of that question. With respect

to the answers to subdivisions (a) and (b) of question 9, it is frankly stated in the brief for appellant in this court:

"It may stand admitted that Casterline sustained a loss of $2,753.50 in its business because it was unable to handle grain in this structure beginning as of November 30, 1950."

In this court counsel for plaintiff predicate their argument upon the jury's answer to question No. 2, subdivision (b), in which the jury found that it was reasonably prudent that plaintiff decline to commence the actual construction of the building until it was furnished with Reconstruction Finance Corporation's written approval of the plans and specifications, with the incidental references to answers to questions Nos. 4 and 5. We think plaintiff cannot give any reliance upon the answers to the portion of question No. 2 for the reason that it was simply a request for the jury to say what a prudent person might do. A more specific reason, however, is that we are told by counsel for plaintiff in their brief that Reconstruction Finance Corporation's written approval of the plans and specifications had never been given, even to the date of the argument in this court. It is clear plaintiff never relied upon getting such written approval, for it did go ahead and build this structure contemplated by the contract. Counsel even argue that plaintiff need not have commenced the construction of the building at all because of the lack of such written approval. We inquire: Suppose such a position could have been taken, what of it, in view of the fact that plaintiff went ahead and constructed the building without it? Plaintiff went ahead and built the structure and got payments in amounts of ten, fifteen and twenty thousand dollars at the times provided for in the contract and in the aggregate of $100,000. It does appear that defendant had made plans through the Fidelity State Bank and the Reconstruction Finance Corporation to finance the building of the structure. Perhaps the Reconstruction Finance Corporation would not have advanced its share of the loan unless it had been satisfied with the plans and specifications. But we find no requirement anywhere that plaintiff should delay commencing the building until it received the written approval of the plans from the Reconstruction Finance Corporation. Answering question 4, the jury found defendant had caused plaintiff some delay, and in question 5 they were asked what defendant did. The jury named two things, neither of which was that defendant had not furnished plaintiff official approval of the plans by the Reconstruc-

tion Finance Corporation. We note also that there is no specific issue made of that by the pleadings. It is now altogether too late for plaintiff to present a contention that it should not have commenced the construction work until it received such written approval. There is no reason to say that in reaching its general verdict the jury did not take into consideration its answers to questions 4 and 5.

The pertinent portion of our statute (G. S. 1949, 60-2918) with respect to the effect to be given to answers to special questions reads:

"When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly."

This statute has been repeatedly construed in this court.

A general verdict in favor of a party to an action imports a finding in his favor upon all issues in the case. Where there is a general verdict and special findings they should always be harmonized, if possible. Every reasonable presumption will be indulged in favor of the general verdict. Nothing will be presumed in favor of the special findings. Possible inconsistencies between the findings and the general verdict will not be sufficient to set aside the latter. The general verdict may be set aside only when the special findings are contrary to the verdict and compel judgment setting aside the general verdict as a matter of law. Unless the effect of special findings, when considered as a whole, is such as to overthrow the general verdict, the verdict must stand. Where one interpretation will harmonize the answers to special questions with the general verdict, and another interpretation would show the two to be inconsistent, the interpretation that would show the two to be harmonious will be adopted. The following late cases, citing earlier ones, are but a few of the many in our reports which sustain the above propositions:

*Marley v. Wichita Transportation Corp.*, 150 Kan. 818, 96 P. 2d 877;

*Isle v. Kaw Transport Co.*, 159 Kan. 110, 152 P. 2d 827;

*Underhill v. Motes*, 160 Kan. 679, 165 P. 2d 218;

*Lord v. Hercules Powder Co.*, 161 Kan. 268, 167 P. 2d 299;

*Jelf v. Cottonwood Falls Gas Co.*, 162 Kan. 713, 178 P. 2d 992;

*Mehl v. Carter*, 171 Kan. 597, 237 P. 2d 240;

*Sheeley Baking Co. v. Suddarth*, 172 Kan. 533,, 241 P. 2d 496.

Considering all the argument on behalf of plaintiff we find the

trial court did not err in overruling its motion for judgment on the answers to the special questions notwithstanding the general verdict.

The judgment of the trial court is affirmed.