No. 38,838

Nannie Jane Tuggle, Administratrix of the Estate of Charles Tuggle, Deceased, *Appellee*, v. Kenneth King Cathers, *Appellant*.

(254 P. 2d 807)

Opinion filed March 7, 1953.

*Milton Zacharias,* of Wichita, argued the cause, and *Vincent F. Hiebsch, Kenneth H. Hiebsch, J. R. Sheedy, Yale W. Gifford,* and *Richard A. Render,* all of Wichita, were with him on the briefs for the appellant.

*Richard L. Becker,* of Coffeyville, argued the cause, and *Morris D. Hildreth,* of Coffeyville, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Wertz, J.: This is an action brought by the administratrix of a decedent's estate for damages for the alleged wrongful death of the decedent, resulting from a collision of two automobiles. The plaintiff recovered and defendant appeals, assigning two separate specifications of error: (1) In overruling defendant's demurrer to plaintiff's evidence and (2) in overruling defendant's motion for judgment *non obstante veredicto.*

Except as they define the issues, the pleadings are unimportant and require little attention. All that need be said respecting them is that the petition alleged the action is brought by the plaintiff as administratrix of the estate of Charles Tuggle, deceased; that there is an overpass on U. S. Highway 166, a short distance west of Coffeyville, Kansas; that the overpass is concrete and is 23 feet 10 inches wide between curbs with concrete banisters and protective railings on each side of the overpass; that prior to the time of the collision alleged, the defendant, Kenneth King Cathers, was under the influence of intoxicating liquor and in such a condition that he was not in full control of his faculties while operating his automobile; that about 12:30 o'clock·a. m. on the 14th day of

September, 1951, the deceased, Charles Tuggle, was driving his automobile in a westerly direction on the north side of the highway on said overpass; that at the time and place defendant Cathers was driving his automobile in an easterly direction at a high and dangerous rate of speed, and while under the influence of intoxicating liquor; that the defendant saw or should have seen the Tuggle automobile, but because of his intoxicated condition and excessive speed was unable to properly guide and control his automobile, and that at a point approximately 99 feet east of the west end of the bridge portion of said overpass, the defendant turned to the left, crossed to the north of the center line of said bridge and into the automobile driven by Charles Tuggle, deceased, striking it with the left front of defendant's automobile to the rear of the front bumper on the left side, driving the rear portion of the automobile of the deceased into and against the north banister of the overpass bridge; that the acts of defendant were reckless and careless.

Defendant answered by way of a demurrer to the petition, and a general denial, and alleged that if the said Charles Tuggle, deceased, died as a result of injuries received in the collision, such injuries were due to the contributory negligent acts of the decedent, which were the direct and proximate cause of his death, and that the collision was the result of an unavoidable accident, and alternative allegations of last clear chance on the part of the plaintiff to avoid the collision.

Plaintiff's reply was a general denial.

At the outset it may be stated that plaintiff challenges the right of the defendant to be heard on his first specification of error, *i. e.*, that the trial court erred in overruling defendant's demurrer to the plaintiff's evidence on the ground that no motion for a new trial was filed and, in the absence of such a motion, it is not within the scope of appellate review.

G. S. 1949, 60-3302, *Second*, provides that an order that sustains or overrules a demurrer is an appealable order. It is not necessary for the party, against whom the ruling is made, to file a motion for a new trial as a basis for appeal from an order sustaining or overruling a demurrer to the evidence. In cases where the ruling on a demurrer precedes a judgment, and the appeal from the judgment is taken in time, this court will consider any possible error arising by reason of the ruling on the demurrer even if no separate appeal

has been taken, provided such possible erroneous ruling is one of the specifications of error. *Stinson v. McConnell,* 160 Kan. 1, 159 P. 2d 406; *Walton v. Walton,* 170 Kan. 13, 223 P. 2d 997; West's Kansas Digest, Appeal and Error, § 291; 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 21.)

In the instant case, the ruling on the demurrer preceded the judgment, the appeal from the judgment was taken in time, and the alleged erroneous ruling (on the demurrer) was one of the specifications of error. Plaintiff's objection to the defendant's right to be heard on this specification of error is not well taken.

Was there sufficient evidence of defendant's negligence to require the submission of that issue to the jury? Plaintiff's evidence, construed in the light most favorable to her, as it must be on a demurrer, in substance disclosed:

The collision occurred on an overpass west of Coffeyville, Kansas, about 12:30 a. m., September 14, 1951. The deceased was driving his automobile in a westerly direction and the defendant was driving his automobile in an easterly direction. The collision took place about 100 feet east of the west end of the "bridge" portion of the overpass and about 200 feet west of the crown of the overpass. The left front of defendant's automobile struck the left side of decedent's automobile just back of the front bumper. The blow from the defendant's car swung the rear of the automobile of the decedent to the north and onto the banister to his right side. From the center of the highway at the approximate area of the impact to the mark made by the right rear wheel of the decedent's automobile where it had been spun around was about 25 feet in a northeasterly direction. The final resting place of the automobile of the deceased was about 35 feet due west of the general area of the collision. This area was about 200 feet west of the center or crown of the overpass, showing the decedent's automobile was traveling down hill, and defendant's automobile was traveling up hill at the place of the collision and continued traveling up hill until it came to rest on its top. Defendant's automobile traveled approximately 75 feet after the impact and struck the south railing of the overpass in a number of places, knocking a chunk out of one post, and finally upsetting.

Police Officer Simpson testified that at 11:30 p. m., about one hour before the collision occurred, he found the defendant in the kitchen of a cafe sitting at a table with a one-half pint bottle of

whiskey half full; that when he asked defendant to move his automobile parked behind the cafe, he noticed that defendant was "sort of slow-like and kind of weaved-like." In his opinion, defendant was intoxicated, so the officer moved defendant's car. Officer Simpson told defendant that he was too drunk to drive a car, and if he caught him in his car after that time he would pick him up.

Ethel Deal testified that she was working at the cafe that evening and was there when the officer told defendant not to move his car; that the officer told her not to let defendant drive the car; that he had been drinking; that after the officer left, defendant asked her to drive his car out to the highway; that she noticed defendant was sick, drunk or doped; and that later defendant did drive his car from the cafe out to the street and then turned on his lights; that defendant's eyes were red and bloodshot, and that he looked like he could not see very well. The defendant stated to her that he could drive better when he was drunk than when he was sober.

Mary Deal testified that she was working at the cafe on the night in question; that defendant asked her to drive him out of town, but she didn't reply as she didn't want to drive him any place.

Immediately before the collision, decedent passed an automobile driven by one Earl Speece; deceased flashed his headlights indicating his desire to pass, and was driving 40 or 45 miles per hour. After passing Speece, he drove his automobile onto the right lane of traffic and proceeded onto and over the overpass on his right side of the road. Witness Speece could see decedent's automobile immediately before the collision and it appeared to be still on its right side of the road.

Highway Patrolman Hazlett testified he made an investigation shortly after the collision and, in his opinion, the decedent's car was trying to get away from defendant's car, and that defendant's car hit decedent's car on the left side just behind the left front wheel. The witness further testified that from an examination of the decedent's car, the impact was just in front of the left front door and just back of the bumper on the left side, and in his opinion defendant's car ran into the car of decedent. There were no skid marks showing application of brakes.

At the close of plaintiff's evidence, defendant interposed a demurrer to the evidence on the ground that the evidence failed to show defendant was negligent, and that it clearly showed the plain-

tiff was guilty of contributory negligence as a matter of law. The demurrer was overruled and is assigned by defendant as error. Defendant did not stand on his demurrer but chose to testify. The material part of his evidence is as follows:

That he drove to Caney, Kansas, on the evening of September 13, 1951, had two glasses of beer and went to a movie before going to a cafe; later that evening Officer Simpson came in the cafe and told him to move his car; that when he stood up, Simpson told him to sit down and that he (Simpson) would move it; that about 11:45 that evening he left Caney on the way to Coffeyville; that when he approached the overpass west of town he saw bright lights; that he asked for dimmers and didn't get them; by that time he realized the car was on his side of the road; that he hit the dimmer switch and the approaching car failed to dim his lights, so he again hit the dimmer switch; the bright lights from the approaching car looked like they were taking up the whole overpass as if to leave no room for him, and the collision occurred; that he was driving on his way from Caney about 40 miles per hour. When asked what he did to avoid the collision he stated: "Well, I imagine I went for my brakes." On cross examination of the defendant, he testified that Officer Simpson had told him not to move his car and that he had jokingly asked the witness for plaintiff, Miss Deal, to drive him out of town; and that he was driving 40 miles per hour when he came onto the overpass.

The case was submitted to the jury which, after deliberating, returned its general verdict in favor of the plaintiff and against the defendant. At the same time the jury returned into court its answers to special questions submitted by the court, the ones pertinent to this appeal being as follows:

"Q. 1 At what rate of speed do you find the Oldsmobile was moving immediately before the collision? (Decedent's car)

"A. In excess of 40 miles per hour.

"Q. 2 At what rate of speed do you find the Lincoln-Zephr was moving immediately before the collision? (Defendant's car)

"A. In excess of 40 miles per hour.

"Q. 3 Where was the 'gouge' or 'scrape' in the pavement with reference to the center line of the pavment?

"A. 3" to the north of center line.

"Q. 4 What part of the front end of the Oldsmobile made the 'gouge' in the pavement?

"A. 'A' frame bolt.

"Q. 5 Do you find that the decedent failed to dim the lights of his car as he approached the defendant?

"A. No.

"Q. 6  Do you find that the lights of decedent's automobile were so bright that they blinded the defendant prior to the collision?

"A. Yes."

Defendant's motion for judgment on the jury's answers to the special questions, notwithstanding the general verdict of the jury, was overruled. To this ruling, the defendant assigns error. The foregoing completes the evidence and pleadings necessary to determine the two issues raised on appeal.

Defendant argues that his demurrer to plaintiff's evidence should have been sustained.

In testing the sufficiency of evidence as against a demurrer, the court shall consider all of the plaintiff's evidence as true, consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory nor weigh any differences between her direct and cross examination and, if so considered, there is any evidence which sustains plaintiff's case, the demurrer should be overruled. (*Cain v. Steely,* 173 Kan. 866, 252 P. 2d 909, and cases therein cited; West's Kansas Digest, Negligence, § 136 [9] [10], Appeal and Error, § 927 [5], and Trial, § 156 [2] [3].) And inasmuch as defendant did not stand upon his demurrer but elected to introduce testimony in his defense, any evidence that he may have offered which supplies any lack in the plaintiff's proof, will be considered in determining the correctness of the order overruling the demurrer. (*Lechleitner v. Cummings,* 159 Kan. 171, 152 P. 2d 843; *Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899.)

It is also a well-established rule in this state that in determining whether a plaintiff is guilty of contributory negligence when tested by demurrer, the question must be submitted to the jury if the facts are such that reasonable minds might reach different conclusions thereon. (*Cain v. Steely,* supra; *Hill v. Hill,* 170 Kan. 721, 228 P. 2d 713; *McCracken v. Stewart,* 170 Kan. 129, 223 P. 2d 963; *Hukle v. Kimble,* 169 Kan. 438, 219 P. 2d 434; West's Kansas Digest, Negligence, § 136 [9]; 4 Hatcher's Kansas Digest [Rev. Ed.], Negligence, § 75.)

It is true, as argued by defendant, that the simple fact the collision occurred and someone was injured, or some damage done, standing alone, will not support a verdict. There must be substantial, competent evidence of defendant's negligence which caused

the injury. It is also true that when plaintiff rested her case, no one had testified who had been an eye witness to the actual collision. But the testimony of eye witnesses is not always essential. Evidence of physical facts and circumstances may be sufficiently clear to warrant a trial court in submitting the question of how the collision occurred and who was at fault to a jury for decision even in the absence of testimony of eye witnesses. (*Sawhill v. Casualty Reciprocal Exchange,* 152 Kan. 735, 107 P. 2d 770; *In re Estate of Modlin,* 172 Kan. 428, 241 P. 2d 692.)

In the instant case, there was substantial, competent evidence that the defendant one hour before the collision was in such an intoxicated condition as to be unable to drive a car in safety. He had been warned by an officer of the law to refrain from driving. He stated that he could drive better drunk than sober, and in such condition he got into h's automobile, drove to one of the main thoroughfares and proceeded at a rate of speed, under his own testimony, of 40 miles per hour to the point of collision. He stated that as he approached the overpass he saw bright lights, asked for dimmers, and again asked for dimmers, but yet there was no evidence that he slackened his speed or applied his brakes under such conditions; that after striking the decedent's automobile on its left-hand side back of the bumper, not head-on, his automobile traveled a distance of 75 feet up an incline, scraping along the banister of the overpass at various points, turning over, and finally coming to a complete stop, upside down.

In view of what has been heretofore related, we are of the opinion that the evidence fails to prove decedent guilty of contributory negligence as a matter of law, and have no difficulty in concluding, giving the evidence the benefit of inferences to which it is entitled under the applicable rule, that it was of such character reasonable men in the exercise of fair and impartial judgment might reach different conclusions as to what was the proximate and legal cause of the collision. Under the decisions to which we have referred, the trial court did not err in overruling the demurrer to the evidence and submitting the case to the jury.

Defendant's further contention that the trial court erred in not sustaining his motion for judgment on the answers to special questions is predicated on the proposition that the answers show decedent guilty of contributory negligence as a matter of law. It may be stated as a general rule of law that a motion for judgment on answers to special questions notwithstanding the general verdict,

concedes for that purpose that the answers are supported by the evidence, and in considering defendant's contention we must bear in mind the often repeated rule of this court that a general verdict imports a finding in favor of the prevailing party upon all the issues in the case not inconsistent with the special findings, which are to be given such a construction, if possible, as will bring them into harmony with the general verdict. In so considering the answers to special questions, the court is not permitted to isolate one answer and ignore others, but all are to be considered together, and if one interpretation leads to inconsistency and another to harmony with the general verdict, the latter is to be adopted and, in order to sustain such a motion, it is not sufficient that there be some inconsistencies between the findings, but they must be so contrary to the general verdict as to render a contrary judgment as a matter of law. (*Cain v. Steely,* supra, and cases therein cited.)

The main point urged by defendant why his motion should have been sustained is that the answer to special question No. 3 shows decedent's car to have been on the wrong side of the road by reason of the fact that the "gouge" in the pavement was three inches to the north of the center line; that the "gouge" was made by the "A" frame bolt of decedent's car as disclosed by question No. 4, and that the lefthand side of decedent's car extended some 32 inches to the left of the "A" frame bolt, thereby placing the left side of decedent's car some 29 inches south of the center of the highway and on the wrong side thereof at the time of the collision and, as a result, decedent was guilty of contributory negligence as a matter of law. It would be highly speculative to say that the collision occurred at the actual point where the "A" frame bolt struck the pavement. Be that as it may, that was a question for the jury to determine, and to be weighed along with the other physical facts and testimony in the case. The general verdict was an acceptance of the plaintiff's version of the case.

An examination of the answers to the special questions will reveal that they are in harmony with the general verdict, and that there is nothing in these answers so inconsistent with the general verdict as compels a judgment in favor of the defendant. The trial court did not err in overruling defendant's motion for judgment *non obstante veredicto,* and in entering judgment for the plaintiff on the general verdict.

The judgment is affirmed.