No. 39,060

HENRY METZINGER and DELORES T. METZINGER, *Appellants*, v. CHARLES SUBERA, *Appellee.*

(266 P. 2d 287)

Opinion filed January 23, 1954.

*J. Francis Hesse,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, S. C. Durbin* and *James W. Sargent,* all of Wichita, were with him on the briefs for the appellants.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Gerrit H.*

*Wormhoudt* and *Theodore C. Geisert*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This action was brought by plaintiffs to recover for the wrongful death of their four-year-old daughter who was killed as a result of being struck by the automobile driven by defendant.

The jury returned a very nominal verdict for plaintiffs and also made special findings. Plaintiffs' motion for a new trial, on the grounds the verdict was in part contrary to the evidence, was given under the influence of passion and prejudice, and that the jury was guilty of misconduct, was overruled. Defendant's motion for judgment on the special findings was sustained. Plaintiffs have appealed.

The petition charged defendant with the following acts of negligence—(*a*) in driving at a speed greater than was reasonable and prudent under the circumstances then existing; (*b*) failing to give an audible signal to the child in time to warn her of the impending danger; (*c*) in failing properly to apply his brakes and to stop his vehicle in time to avoid hitting the child; (*d*) in failing to decrease his speed when a special hazard existed; (*e*) in failing to keep his vehicle under control sufficiently to enable him to stop or turn aside under the conditions confronting him immediately prior to the accident; (*f*) in driving his vehicle in a reckless manner and with complete and utter disregard for the safety of other persons on the highway; and (*g*) in failing to keep a proper lookout for other persons on the highway. Recovery was sought in the amount of $15,000.

The answer denied actionable negligence on the part of defendant and alleged contributory negligence on the part of plaintiffs in permitting their four-year-old child to play on and about a public highway without supervision.

The reply denied new matter contained in the answer.

The material facts are not in dispute and may be summarized as follow:

Plaintiffs, who were the parents of six children, lived on a farm a few miles west of Caldwell. Defendant, also a farmer, lived about eight miles west and north of plaintiffs' farm. Plaintiffs' house was located about sixty feet south of a graveled east-west county highway. Three rows of trees, running east-west, were in front of the house, between it and the highway. A driveway on the east side

of the house led to the highway. On the afternoon of May 15, 1951, plaintiff mother was at home doing odds and ends in the house. Her four-year-old daughter was in and out of the house. Once when the mother looked out of a north window she saw the child playing in the front yard with a dog and kitten.

A while later, while engaged in sewing, the mother heard a "thudding" noise and, sensing that something was wrong, went out to the driveway and called her daughter. Receiving no answer she went out to the highway. Some distance to the east, close to the ditch on the south side, was defendant's car. He stated that he thought he had hit the child. The latter's body was on the shoulder of the north side of the highway at a point thirty-five feet east of the center line of the driveway. A few hours later she died as a result of the injuries sustained when struck by the car driven by defendant.

On the fateful afternoon in question defendant, the only eyewitness to the accident, was on his way to town to get some sweet potato plants. He was familiar with the highway, which was a well-graveled county road about thirty feet in width. The ditches on either side were rather steep, making it impossible for a driver to see the bottom of them. As he approached plaintiffs' home from the west he was traveling about fifty miles per hour in his 1949 Ford Tudor automobile. There was nothing in or on the highway. He glanced to the right to make sure that nothing was coming out of plaintiffs' driveway, which, because of the trees, was partially obscured to one driving east. Seeing nothing, he shifted his eyes back to the highway, and, for the first time, when at a point about fifty feet west of the driveway, he saw the little girl "bobble out at me." She was five or six feet in the highway on the north side, about forty or fifty feet east of the driveway. He sounded his horn and applied his brakes. The child continued to run in a diagonal southwesterly course across the road toward the driveway. The sudden application of the brakes caused defendant's car to swerve a little to the north. In attempting to dodge the child defendant attempted to drive to the right or south, and while doing so she was hit by the left front fender. Defendant's car proceeded for some distance down the south side of the road, partially in the ditch, before he was able to bring it to a complete stop without turning over. Defendant estimated his car was traveling about twenty-five miles per hour at the instant the child was hit.

The jury returned a verdict in favor of plaintiffs in the sum of $800, and answered special questions as follow:

"QUESTION No. 1—Where was the child when defendant first saw her? ANSWER: 45 ft east of drive way and 5 ft from edge of road on north side.

"QUESTION No. 2—How far west of the child was defendant when he first saw her? ANSWER: 95 ft west of child.

"QUESTION No. 3—Was the defendant confronted with an emergency through no fault of his own? ANSWER: Yes.

"QUESTION No. 4—When did the defendant first know a special hazard existed? ANSWER: 50 ft west of driveway.

"QUESTION No. 5—What speed was defendant travelling when he first saw the child? ANSWER: 50 miles per hr.

"QUESTION No. 6—What speed was defendant travelling when the collision occurred? ANSWER: 25 miles per hr.

"QUESTION No. 7—What, if anything, did defendant fail to do that he should have done after he first saw the child? ANSWER: He failed to slow his car while anticipating her reaction to the blast of his horn hoping she would stop.

"QUESTION No. 8—If you find the defendant guilty of negligence state what such negligence consisted of? ANSWER: He hesitated too long anticipating what the child would do before he applied his brakes.

"QUESTION No. 9—Did the parents know the child was likely to go onto the highway? ANSWER: Yes.

"QUESTION No. 10—Do you find the parents exercised reasonable care to prevent the child from getting on the highway? ANSWER: We have no evidence either way."

Defendant's motion that the jury be required to return a definite answer to the last question was overruled.

As heretofore stated, plaintiffs' motion for a new trial was overruled, defendant's motion for judgment on the special findings was sustained, and plaintiffs have appealed.

Plaintiffs first contend that it was error to overrule their motion for a new trial, the basis of their argument being that on the face of things the award of only $800 was manifestly inadequate to compensate for the death of their child, and that the verdict was the result of a desire on the part of the jury to compensate them only for one-half of the medical and funeral expenses. In support thereof they refer to an affidavit executed by one of their counsel after he had discussed the matter with two of the jurors the day following the trial.

Defendant answers this contention by arguing that from the special findings it is very apparent the jury was of the opinion he was not guilty of actionable negligence and therefore not liable, but

that, nevertheless, in a spirit of sympathy for plaintiffs, concluded that he should share equally with them in their strictly pecuniary loss.

However, discussion of that question becomes unnecessary if the court ruled properly in rendering judgment for defendant on the special findings, and we therefore proceed to the latter point.

The concluding portion of our statute, G. S. 1949, 60-2918, providing for the submission of special questions to a jury, reads:

"When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly."

In numerous decisions this court has laid down the general rule to the effect that a general verdict imports a finding upon all of the issues in the case not inconsistent with the special findings; that the latter are to be given such a construction, if possible, as will bring them into harmony with the general verdict, but if the special findings cannot be reconciled with the general verdict, and are sufficiently full and complete in themselves, and are not inconsistent with each other, judgment must follow the special findings. (*Marley v. Wichita Transportation Corp.*, 150 Kan. 818, 96 P. 2d 877; *Craig v. Sturgeon*, 151 Kan. 208, 98 P. 2d 139; *Sayeg v. Kansas Gas & Electric Co.*, 156 Kan. 65, 131 P. 2d 648; *Ferguson v. Kansas City Public Service Co.*, 159 Kan. 520, 156 P. 2d 869; *Glenn v. Montgomery Ward & Co.*, 160 Kan. 488, 163 P. 2d 427; *Gabel v. Hanby*, 165 Kan. 116, 193 P. 2d 239, and *Fralick v. Kansas City Public Ser. Co.*, 168 Kan. 134, 211 P. 2d 443.)

Inasmuch as the general verdict in favor of plaintiffs imports a finding in their favor upon all issues, the matter before us therefore narrows itself down to the question whether the special findings compel a judgment for defendant.

The answers to the first six questions tell the story of just what happened that afternoon in accord with the only evidence on the matter. They are to the effect that when defendant first saw the child she was forty-five feet east of the driveway and five feet from the north edge of the road; that he was ninety-five feet west of her; that he was confronted with an emergency through no fault of his own; that he first knew of the special hazard when he was fifty feet west of the driveway, at which time he was traveling fifty miles per hour, and that at the instant of impact his car was going twenty-five miles per hour.

For our purposes, questions 9 and 10, and the answers thereto, may be disregarded.

Plaintiffs rely on the answers to questions 7 and 8 in contending that the jury found defendant to be guilty of actionable negligence which would preclude the sustaining of his motion for judgment on the special findings.

The substance of those answers is that defendant, after sounding his horn, and while trying to anticipate the child's reaction, hesitated too long before applying his brakes.

Along with that finding, which is more or less in the nature of a general conclusion, the jury *specifically* found that when defendant first saw the child he was ninety-five feet from her; that he was confronted with an emergency not of his own making; that he was then driving fifty miles per hour, but that at the instant of impact his car had been slowed to twenty-five miles per hour.

Defendant states, and plaintiffs do not contradict, that a speed of fifty miles per hour is 73.3 feet per second. In other words, had defendant not applied his brakes and thus reduced his speed his car would have traveled the ninety-five feet in approximately 1.3 seconds. A general finding in the nature of a conclusion always must yield to contrary specific and detailed findings on the point in issue. (*Bottenberg Implement Co. v. Sheffield,* 171 Kan. 67, 229 P. 2d 1004; *Krey v. Schmidt,* 172 Kan. 319, 327, 240 P. 2d 153.) Under the *specific* and *detailed* findings the only conclusion to be reached is that defendant *did* apply his brakes *instantly* upon seeing the child dart across the highway. That he was able to reduce his speed as he did, in so short a distance, in the light of common everyday experience in driving on graveled highways, seems remarkable.

And, entirely aside from what has just been said, and conceding, *solely for the sake of argument,* that defendant could have applied his brakes sooner, and had he done so could have avoided striking the child, it has long, if not always, been the rule in this state and elsewhere that one who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. One so confronted is not held to the same accuracy of judgment as would be required of him if he had time for deliberation, and if he exercises such care as an ordinarily prudent man would exercise when confronted by a like emergency he is not liable for an injury which has resulted from his conduct. Failure to exercise the best judgment in an emergency created by another person is not necessarily negligent even though the error of

judgment has results which are lamentable from the standpoint of injurious consequences to others. (*Barnhardt v. Glycerin Co.*, 113 Kan. 136, 213 Pac. 663, 31 A. L. R. 721; *Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, 53 P. 2d 923; *Trinity Universal Ins. Co. v. Farmers Co-operative Exchange of Morland*, 171 Kan. 501, 233 P. 2d 468, and *Sheeley Baking Co. v. Suddarth*, 172 Kan. 533, 536, 537, 241 P. 2d 496.)

Viewed even in the light of hindsight, and assuming that defendant did hesitate a split second before applying his brakes (which, under the undisputed physical facts, certainly would be a violent assumption), under the "emergency" rule such act on his part would not constitute negligence.

And finally, plaintiffs argue that under the circumstances shown by the record the extent of the trial court's power and authority was to grant a new trial, and not to enter judgment for defendant, and cite a number of decisions in support thereof, among them being *Underhill v. Motes*, 160 Kan. 679, 165 P. 2d 218, and *Lord v. Hercules Powder Co.*, 161 Kan. 268, 167 P. 2d 299. However, in the Underhill case it appears the trial court was dissatisfied with the general verdict and some of the special findings, while in the Lord case the court specifically found that upon the special questions and answers thereto, alone, defendants were not entitled to a judgment. Neither decision is in point here. Inherent in the rendition of judgment for defendant on the special findings is the trial court's approval of those findings, and, as we have already shown, under the general rules hereinbefore referred to, they compelled a judgment in favor of defendant.

Other contentions of the parties have been noted and considered, but, in view of the conclusion reached, require no discussion.

The court did not err in overruling plaintiffs' motion for a new trial and in sustaining defendant's motion for judgment on the special findings. The judgment is therefore affirmed.

WERTZ, J. (dissenting): Time will not permit writing an exhaustive opinion, and I will attempt to set forth my views briefly on the question in which I differ with the majority.

Defendant's motion for judgment on the answers to the special questions, notwithstanding the general verdict, concedes for that purpose that the answers are supported by the evidence. (*Cain v. Steely*, 173 Kan. 866, 874, 252 P. 2d 909; *Hubbard v. Allen*, 168

Kan. 695, 701, 215 P. 2d 647.) And on this premise the sole question is—do those answers compel a judgment for defendant?

In considering this question we must bear in mind the often repeated rule of this court that a general verdict imports a finding in favor of the prevailing party upon all of the issues in the case not inconsistent with the special findings, which are to be given such a construction, if possible, as will bring them into harmony with the general verdict. (*Cain v. Steely,* supra; *Hubbard v. Allen,* supra; *Schroeder v. Nelson,* 157 Kan. 320, 326, 139 P. 2d 868; *Davis v. Kansas Electric Power Co.,* 159 Kan. 97, 108, 152 P. 2d 806; *Simeon v. Schroeder,* 170 Kan. 471, 474, 227 P. 2d 153.) In considering answers of the jury to special questions submitted, the court is not permitted to isolate one answer and ignore others, but all are to be considered together, and if one interpretation leads to inconsistency and another to harmony with the general verdict, the latter is to be adopted. (*Cain v. Steely,* supra; *Dick's Transfer Co. v. Miller,* 154 Kan. 574, 119 P. 2d 454; *Lee v. Gas Service Company,* 166 Kan. 285, 288, 201 P. 2d 1023; *Tuggle v. Cathers,* 174 Kan. 122, 254 P. 2d 807.) In considering these special questions and answers together, I am unable to see wherein they are so inconsistent as to compel the overthrowing of the general verdict. The fact that defendant was confronted with an emergency (Q. 3, A. 3) did not relieve him of all negligence as a matter of law. The general rule of law, supported by a mass of authority, is well stated in 38 Am. Jur. 1070, Negligence, § 361:

"A person confronted by an emergency or sudden peril is not required to exercise the greatest prudence or most exact judgment, rather, he is required to exercise only that degree of care which an ordinarily prudent person would exercise under the same or like circumstances. Whether a person in such a situation has exercised that degree of care *is a question of fact for the jury,* unless the facts are undisputed and reasonable minds could draw but one inference from the evidence introduced. . . ." (Emphasis supplied.)

And also in 65 C. J. S. 410, Negligence, § 17a:

"The arising of an emergency does not, however, relieve one from the obligation of exercising ordinary care, but is merely one of the circumstances which is proper for consideration in determining whether ordinary care has been exercised, and if one's conduct did not measure up to the standard of ordinary care under the circumstances in which he found himself he is chargeable with negligence notwithstanding the existence of the emergency. In this connection his conduct is not necessarily to be judged according to the circumstances as they appeared to him, and the proper test is how the circumstances ought to have appeared to him in the exercise of reasonable care."

It is also a well-established rule of this court, and one followed by decisions from nearly every court in the land, that the question of negligence and contributory negligence is a matter for the jury, if the facts are such that reasonable minds in the exercise of fair and impartial judgment might reach different conclusions thereon. (4 Hatcher's Kansas Digest [Rev. Ed.], Negligence, § 71; West's Kansas Digest, Negligence, § 136 [8], [9].)

In view of the foregoing general rules of law, it became a question of fact for the jury as to whether the defendant exercised that degree of care which an ordinarily prudent person would have exercised under the same circumstances. The defendant's car was traveling at a speed of 50 miles per hour when he first saw the child in the highway 95 feet ahead. At that point he was confronted with an emergency. The jury in answer to question No. 7 found that the defendant *failed to slow his car* while anticipating the child's reaction to the blast of his horn, hoping she would stop. And by its answer to question No. 8 found that the defendant *hesitated too long* anticipating what the child would do *before he applied his brakes.*

The majority opinion states that as a matter of arithmetic, defendant's car traveling 50 miles per hour, without applying the brakes, would have traveled 95 feet in 1.3 seconds. Had defendant applied his brakes when he first saw the child, he would have reduced the speed of his car materially, and might have avoided injury to the child which resulted in her death. However, when he saw the child and only sounded his horn, then later applied his brakes, he mathematically rendered the chance of avoiding the accident impossible. Certainly defendant's failure to apply his brakes when he first saw the child, and his failure to reduce the speed is in harmony with the general verdict. What is the duty of the driver of an automobile traveling at the rate of 50 miles per hour, and seeing an infant in a highway 95 feet in front of him? Is it merely to sound the blast of a horn and anticipate that the infant has sufficient intelligence to choose a proper course in getting out of the highway, or is it the duty of such driver under such circumstances to immediately apply his brakes and reduce the speed of his car, in anticipation that such child might not hear the blast of the horn, and, if so, might not respond thereto, or choose an improper course in an attempt to avoid being struck? I can bring myself to but one conclusion and that is—it is a question of fact for

the jury under the evidence in the case, and not a question of law for a court. I cannot bring myself to the conclusion that a trial court or an appellate court, on review, may substitute their own judgment as to the facts of the case under the circumstances, thereby invading the province of the jury. I am of the opinion that the judgment of the trial court should be reversed.

SMITH, J., joins in the foregoing dissenting opinion.