No. 39,607

Leona Dimon and Larry W. Dimon, Linda Kay Dimon and Steve L. Dimon, all minors, by Leona Dimon, Their Mother, Natural Guardian and Next Friend, *Appellees,* v. Lydia M. Garver, *Appellant.*

(283 P. 2d 476)

Opinion filed May 7, 1955.

*Harry O. Janicke,* of Winfield, argued the cause and *J. A. Herlocker* and *Warren D. Andreas,* both of Winfield, were with him on the briefs for the appellant.

*Earle N. Wright,* of Arkansas City, argued the cause and *George Templar* and *Ted M. Templar,* both of Arkansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action by a mother and her children to recover damages alleged to have been sustained when an automobile driven by defendant collided with a motorcycle upon which plaintiffs' husband and father was riding, causing his death. The general verdict was for plaintiffs and special questions were answered. Defendant's demurrer to the evidence and at the conclusion of the trial her motion for judgment on the answers to special questions were overruled. Plaintiffs' motion for a new trial was sustained. Defendant has appealed.

After alleging the relationship of the parties, the petition alleged on the day in question decedent was riding his motorcycle in a westerly direction on highway 160 on the north side of the highway near the eastern city limits of Winfield and defendant was driving her car in an easterly direction on the same highway on the south side of it; that she, without warning, turned abruptly to the left and across into the north side of the highway and directly in front of decedent's motorcycle, causing a collision of such force and violence that decedent suffered injuries from which he died the next day; that the front end of defendant's car extended across the central line of

the highway approximately six feet, at which point the collision between decedent's body and the front end of defendant's car occurred.

The petition then set out eight particulars in which defendant was negligent—in failing to signal; failing to yield the right of way; failing to exercise due care; failing to keep a lookout; failing to keep her car on the south side of highway 160; failing to turn her car to the right and away from decedent before the collision occurred; in driving her car on the north side of the highway when there was a yellow line marking the middle; in driving her car in front of decedent and colliding with it, when the exercise of reasonable care would have apprised defendant of decedent's presence and peril and afforded time and opportunity for her to avoid colliding with the decedent. The petition then alleged that without any contributory negligence on decedent's part all the acts of negligence set out proximately caused the collision and the death of decedent. The petition then stated plaintiffs' damages. We are not interested in them here. By an amendment in obedience to an order of the court, plaintiffs stated that decedent was ninety feet from defendant when she turned left into the north side of the highway.

The answer of defendant was first a general denial; next that she was driving on Alexander Street in Winfield at the time in question and turned onto Ninth Street, which is an extension of highway 160, and drove east on the highway toward a grocery store just at the east edge of Winfield; that she was driving at twenty to twenty-five miles an hour; that Ninth Avenue at this point is paved and forty-one feet wide; that as she approached a point more than one hundred feet west of the grocery she signaled for a left turn by extending her left hand and decreasing her speed; that as she approached the place where she expected to turn, still giving her left arm signal, she saw a motorcycle approaching from the east, driving at a speed of from seventy to eighty miles per hour; that she lowered her left hand and stopped her car on the south half of the pavement slightly angled for the left-hand turn, knowing that there was ample room on the left side of her car to allow passage of any vehicle; that just as she brought her car to a stop the motorcycle commenced to skid, the driver lost control of it and it skidded into the front end of defendant's car; that at all times defendant's car was within the city limits. The answer then quoted a city ordinance making reckless driving a misdemeanor, also one

fixing speed limits, and alleged that defendant was at all times on her half of the highway.

The answer set out seven particulars in which decedent was guilty of negligence; in failing to see her signal; in driving at a rate of speed greater than was reasonable and prudent; in driving in excess of thirty miles per hour; in failing to reduce his speed and keep control of his motorcycle; in failing to exercise due care; in failing to keep a lookout; in failing to turn his motorcycle while still under his control to the right so as to avoid the collision; and alleged that decedent was familiar with the highway and was a reckless driver.

The reply was a general denial and a quotation from a city ordinance that vehicles should be driven on the right half of the street except with certain exceptions and a signal of intention to turn should be given continuously during not less than the last one hundred feet traveled before turning.

At the close of plaintiffs' evidence defendant's demurrer to it was overruled.

The jury returned a verdict for plaintiff and answered special questions as follows:

"1.

"Question: At what speed was R. W. Dimon traveling when he saw or could have seen the defendant first slow her vehicle and start to turn to the left? A. 60 miles per hour.

"2.

"Question: At what speed was R. W. Dimon traveling upon his arrival at the east entrance of the Glass Grocery Store? A. About 50 miles per hour.

"3.

"Question: Was R. W. Dimon's motorcycle ever turned from a direct course from the highway prior to the impact? A. Only from the pull from pavement after was on its side.

"4.

"Question: How many feet in distance was there between the left front corner of defendant's automobile and the north curb line of the highway at the instant of the collision? A. About 15 feet.

"5.

"Question: What, if anything, prevented R. W. Dimon from avoiding the collision by turning his motorcycle to the right and to the north of defendant's automobile after he saw or could have seen defendant's automobile slowing and starting to turn to the left? A. Because he had lost control of his motorcycle.

"6.

"Question: How far east of the point of collision did R. W. Dimon lose control of his motorcycle? A. At about 45 feet.

"7.

"Question: How far was R. W. Dimon from defendant's automobile when he saw or should have seen defendant's automobile turning to the left? A. About 100 or 125 feet.

"8.

"Question: How much of the Garver car, in feet and inches, at the time of the impact was:

"(a) North of the center line?

"(b) South of the center line?

"A. (a) About 5 feet of front end of car. (b) About 1 foot of front end of car.

"9.

"Question: Do you find that the force of the impact pushed Garver automobile backward? A. Yes.

"10.

"Question: If you answer the previous question in the affirmative state in feet, how far? A. From 4 to 6 feet.

"11.

"Question: Where was the center of the point of impact with reference to the center of the highway? A. From 2 to 3 feet north of center."

Defendant filed a motion to set aside answers to special questions 4 and 8. Plaintiffs filed a motion for a new trial on the ground of erroneous rulings; the answers to special questions and the general verdict were in whole or in part contrary to the evidence; and misconduct of the jury.

Defendant also filed a motion for judgment on the answers to special questions notwithstanding the general verdict. The trial court sustained plaintiff's motion for a new trial and overruled the other motions—hence this appeal.

The specifications of error are the trial court erred in sustaining the plaintiffs' motion for a new trial; in overruling the defendant's motion to set aside and vacate answers to special questions; in overruling the defendant's motion for judgment notwithstanding the general verdict; in overruling the defendant's demurrer to plaintiffs' evidence; in overruling the defendant's general demurrer on the whole record; and in overruling the defendant's motion for an instructed verdict in favor of the defendant.

Appellant states the questions involved to be: Did the trial court

commit error in overruling defendant's demurrer to plaintiffs' evidence?; Did the trial court commit error in overruling defendant's motion for judgment notwithstanding the general verdict?; and Did the trial court commit error in overruling defendant's motion for judgment on the whole record?

The entire appeal may be disposed of by dealing with the defendant's demurrer to the evidence. Defendant with commendable candor concedes the rule to be that in considering a demurrer to the evidence, in testing the sufficiency of evidence as against a demurrer, the court shall consider all of the plaintiffs' evidence as true, consider that favorable to plaintiffs, together with all reasonable inferences to be drawn therefrom, and disregard that unfavorable to plaintiffs, and shall not weigh any part that is contradictory nor weigh any differences between their direct and cross examination and, if so considered, there is any evidence which sustains plaintiffs' case, the demurrer should be overruled. (See *Tuggle v. Cathers*, 174 Kan. 122, 254 P. 2d 807.) She argues, however, that where tested by that rule the plaintiffs' evidence with all reasonable inferences to be drawn therefrom shows contributory negligence clearly and beyond question, it becomes a question of law for the court and bars the recovery. She argues that the evidence in this case was such that reasonable minds could reach only a conclusion that the decedent was guilty of contributory negligence as a matter of law.

With this argument before us we have examined this record. But little would be added to this opinion by setting out the evidence here in detail. Suffice it to say that when the evidence of plaintiffs is examined in the light of the rule for considering demurrers to the evidence, set out above, we have concluded that reasonable minds might differ as to whether deceased was guilty of negligence, which was the proximate cause of the collision. The evidence without a doubt put defendant's car somewhat over the center line of the highway into the decedent's lane of traffic. Whether the collision was caused by the rider of the motorcycle losing control of it due to his excessive speed is not so clear, under all the surrounding facts and circumstances set out in plaintiffs' evidence. Defendant herself stated in her evidence that she did not see the motorcycle approaching on the highway until she started to turn into the driveway. This testimony came after the defendant's demurrer to the evidence was overruled. Where such

evidence tends to prove the plaintiffs' case it may be considered on appeal even though it was not part of the plaintiffs' case in chief. (*Harris v. Exon*, 161 Kan. 582, 170 P. 2d 827.)

Defendant argues, apparently as an afterthought, that the trial court erred in overruling her motion for judgment on the answers to special questions. This argument will not be considered by us since the trial court did sustain plaintiffs' motion for a new trial.

The judgment of the trial court is affirmed.