MOUNT OLIVET BAPTIST CHURCH, a Non-Profit Corporation, Plaintiff-Appellant,

v.

Russell Robert GEORGE et al., Defendants-Respondents.

George PARKINS, an Individual, d/b/a Parkins Machine Shop, Plaintiff-Appellant,

v.

Russell Robert GEORGE et al., Defendants-Respondents.

No. 50280.

Supreme Court of Missouri, Division No. 2.

April 13, 1964.

Knipmeyer, McCann & Millett, by Glenn E. McCann, Joseph H. Moore, Kansas City, and Everett Fritz, Kansas City, for appellants.

Douglas Stripp, Robert C. Canfield, Kansas City, Watson, Ess, Marshall & Enggas, Kansas City, of counsel, for respondents.

ELMO B. HUNTER, Special Judge.

This is an appeal by the plaintiffs in two actions brought in the Circuit Court of Jackson County and consolidated for trial and appeal. Each suit was for damages sustained by the particular plaintiff in the destruction by fire of his property. The Mount Olivet Baptist Church, plaintiff in cause No. 122,838 sued for damages in the sum of $20,000 for the total destruction of its church building located near Third and State Street in Kansas City, Kansas; and plaintiff George Parkins in cause No. 122,-839 sued for $32,500 for the total destruction of his machine shop building located on the corner next to the church building.

At the close of plaintiffs' evidence all four of the defendants orally and separately moved for a directed verdict on the ground, among others, that no submissible case had been made. The trial judge sustained the

motions, advised the jury thereof, and entered judgment for all defendants accordingly.

■ The principal question on this appeal is whether the trial court erred in sustaining the motions for directed verdict. It is our duty to review the pertinent evidence in the light most favorable to plaintiffs and to give them the benefit of every inference reasonably deducible therefrom. With that duty in mind we proceed to summarize the evidence on the submissibility issue, and later determine which of it properly applies to each particular defendant and whether it is sufficient to make a submissible case.

On October 17, 1958, approximately 3:30 in the morning, defendant Russell Robert George, while acting within the scope of his employment with defendant Colonial Petroleum Company, a corporation, was driving a tractor-trailer unit, some 45 feet in length and loaded with 5,000 gallons of gasoline, south on Third Street in Kansas City, Kansas, at approximately 20 miles per hour. This tractor-trailer was owned by defendants R. L. Trimm and Thomas McWilliams, partners, who had leased it to Colonial Petroleum Company. Defendant Aetna Casualty and Surety Company was the liability insurance carrier.

It was the intention of defendant George to make a right-hand turn onto State Street and to proceed west thereon. State Street runs east and west, and Third Street runs north and south. At this point Third Street is approximately 52 feet wide and State Street is 58 feet wide. Both Third Street and State Street have street lighting at the intersection, and the area was "well lighted." Third Street is approximately level as one headed in a southerly direction approaches the intersection with State Street, but State Street, proceeding west from the intersection, has a steep incline of approximately 30 degrees.

As he approached, and was approximately 10 to 15 feet north of the intersection, George looked into the rear-view mirrors on each side of his vehicle to see if any traffic was following him and saw no traffic behind him. George then turned the corner and started up State Street when he heard an impact of some sort. A Pontiac automobile which he had not seen prior to the impact had struck the trailer portion approximately half way back on the right-hand side. George then turned his head to look through the rear window and discovered the trailer was on fire. He continued up State Street approximately 50 more feet, crossing over its center line and stopped somewhat on the south side of State Street. He applied his air brakes immediately and jumped out, and then the truck rolled back down the hill some 114 feet coming to rest on the west side of Third Street, the gasoline aflame. These flames spread to and destroyed plaintiffs' mentioned property, which according to some of the evidence was valued at $13,584 (Mount Olivet building) and $2,824 (Parkins building) plus $2,865.75 as the value of the Mount Olivet building's contents destroyed by the fire.

The only witness presented at the trial was James Toura, a police officer who arrived at the scene after the accident, but while the two buildings and the tractor-trailer were still burning. Nearly all of plaintiffs' evidence came from alleged admissions against interest made by defendant George to Officer Toura at the scene of the accident and alleged admissions against interest contained in defendant George's answers to interrogatories and in his deposition, to which admissions all of the other defendants timely and successfully objected as not being binding upon them. Some evidence came from pictures taken after the accident.

■ We first consider whether a submissible case was made against defendants Trimm and McWilliams. Plaintiffs' counsel in his opening statement admitted to the jury and stipulated with these defendants' attorney that these two defendants who are partners in the ownership of the tractor-trailer, had leased it to defendant Colonial Petroleum Company and that defendant

George was actually an employee of the Colonial Petroleum Company and was operating the truck at the time in question as its employee for and on its behalf. Yet plaintiff now contends the trial court erred in directing a verdict for defendants Trimm and McWilliams "since these defendants admit ownership of the vehicle driven by George * * * (and) such ownership raises a presumption of employment and that George was acting in the course thereof" citing O'Malley v. Heman Construction Company, 255 Mo. 386, 164 S.W. 565; Fleischman v. Polar Wave Ice & Fuel Co., 148 Mo.App. 117, 127 S.W. 660 and Stevens v. Missouri Pac. Ry. Co., Mo., 355 S.W.2d 122. However, in none of the cited cases was there an admission or stipulation by the pertinent party that the owned vehicle had been leased or given over to another person whose employee or agent was operating it in the scope of his employment and for the benefit of that latter person. Whatever presumption or inference concerning whether the driver was the vehicle owner's servant might otherwise obtain, no presumption or inference of employment of a driver by the owner and that the driver was acting in the course of such employment can be permitted to be drawn from mere ownership of the vehicle in question in the face of an admission or stipulation to the contrary. It is plaintiffs' tacit concession that unless George was an employee of defendants Trimm and McWilliams at the time in question no submissible case was made against them. Under the facts before us there is no permissible inference or presumption of the nature plaintiff wishes to assert, and the trial court did not err in directing a verdict and entering judgment for defendants Trimm and McWilliams.

■ Plaintiffs next contend the trial court erred in directing a verdict for defendant Colonial Petroleum Company for the reason that company admitted it was George's employer and, as such, is liable for George's negligence. The difficulty with this contention is that to make out any semblance of a submissible case against George, plaintiffs found it necessary to introduce as admissions against interest George's answers to interrogatories and George's answers contained in his deposition, to all of which the defendants, including Colonial Petroleum Company, timely objected as not being binding on them. These objections were sustained by the trial court which instructed the jury that the particular evidence could not be considered as applying to any defendant other than George. See, Shelton v. Wolf Cheese Co., 338 Mo. 1129, 93 S.W.2d 947; Roush v. Alkire Truck Lines, Inc., Mo., 299 S.W.2d 518; Murray v. DeLuxe Motor Stages of Illinois, Mo.App., 133 S.W.2d 1074(11). Plaintiffs did not object to these rulings and instructions and have not preserved the question of their correctness for appellate review. Stripped of the benefit of this evidence (which is set out below in connection with our discussion of defendant George's liability) plaintiffs clearly have failed to make a submissible case against defendant Colonial Petroleum Company, and the trial court did not err in directing a verdict for that defendant.

As to defendant George, plaintiffs suggest three particular matters in which they contend a submissible case of negligence was made. The first is that George was negligent in the operation of the tractor-trailer unit in executing the right turn onto State Street in that he failed to keep a proper lookout in the operation of the vehicle he was driving. Specifically, say plaintiffs, when George looked in his rear-vision mirror while still fifteen feet from the intersection and saw nothing he didn't look with "ordinary care under the circumstances" or he would have seen the oncoming Pontiac automobile which must have been there to be seen, and he would not have attempted to turn.

■ The substantive law of Kansas controls in this case as the accident occurred in that state. It is the stated rule in Kansas that "* * * the driver of a motor vehicle has the duty of keeping a proper lookout at all times, the extent of observa-

tion being dependent upon the conditions and circumstances then existing * * *." DeGraw v. Kansas City & Leavenworth Transp. Co., 170 Kan. 713, 717, 228 P.2d 527, 531 (1951). And, the driver of a motor vehicle is presumed to have seen what he could and should have seen in the proper performance of his duty. Bottenberg Implement Co. v. Sheffield, 171 Kan. 67, 229 P.2d 1004. His duty includes the exercise of ordinary or reasonable care in making a turn. Garrison v. Denton, 170 Kan. 79, 223 P.2d 718.

The difficulty with plaintiffs' contention is not with their statement of the substantive law of Kansas upon which they rely but rather is with its application to the sparse evidence before us.

The tractor-trailer had almost completed its turn at the time of the impact which according to the evidence left some debris "about" eight feet south of the north curb of State Street and approximately even with the west curb line of Third Street. As to the Pontiac automobile, where it came from, how fast it was traveling, or whether it had its lights on that night, the record is silent.[1] Likewise the record is barren of any evidence placing the Pontiac automobile within George's possible view at the time he looked into the rear-view mirrors. In fact there is no evidence placing it anywhere until after the collision. Officer Toura, who acknowledged the Pontiac could have been moved prior to his arrival, stated that on his arrival at the scene the Pontiac car was on the northwest corner of the intersection, facing in a southwesterly direction, with a portion of the front part up on the curb. There was no mention of skid marks or tire marks.

Did the Pontiac come racing up from a side street or alley? Did it come out of one of the private driveways? Did it come up over the sharp hill crest where State Street enters Third from the east, then run out of control and swerve to the right around the end of the trailer and back into the side of it? Was it behind the tractor-trailer unit but so close as to be in a blind spot to one looking into this type of rear-view mirror? Was it so far behind the tractor-trailer unit as not to be discernible in the dark? These are speculative matters and, of course, a jury is not permitted to pass on an issue on which there is no pertinent substantial evidence and resort must be had to speculation, guess or surmise to resolve it. It is our conclusion that under these particular facts there was no submissible issue of negligence raised because of defendant George's failure to see the Pontiac automobile at the time he looked into his rear-vision mirrors.

In ruling as we have we do not hold that under different facts the physical evidence at the scene of an accident could not be sufficient to permit a finding as to where a car was just prior to an accident, or when a car driver looked in a particular direction.

Plaintiffs next contend the evidence supported a submission that defendant George negligently handled his equipment after the collision. As illuminated in their brief plaintiffs say there was evidence that after the Pontiac ran into the trailer and set it afire George was negligent in abandoning the tractor-trailer "without properly setting the brakes thereon" and in driving it in violation of the Kansas Statute (Section 8–5,101 G.S.Kan. 1949) requiring such units to be equipped with adequate brakes.[2] A determination of these two contentions requires consideration of the very sketchy evidence pertinent to them, which evidence we now set out in full.

1. Defendants' counsel advised the jury in the opening statement that the Pontiac automobile was a stolen car being driven at a high rate of speed (presumably by the thief) but the record is completely devoid of any supportive evidence of this.

2. The Kansas Statute, Section 8–5,101 provides "(1) Every motor vehicle or combination of vehicles other than a motorcycle, when operated upon a highway, shall be equipped with brakes adequate to control the movement of and to

Officer Toura, who arrived at the scene after the tractor-trailer had rolled back down the hill and had come to a stop, at the trial was asked what George told him about how this collision occurred and what transpired. He answered, "The thing he told me, that he was making a right-hand turn from Third Street onto State, he felt an impact of some sort, and as he rounded —started up State, he looked out his rear-view mirror on the right side and seen that the trailer was on fire. He said he applied his air brakes immediately and jumped out, and then the truck rolled back down the hill."

. Defendant George's answers to interrogatories No. 10 and No. 11 were the sole testimony concerning the type and condition of the brakes. Interrogatory No. 10: "Describe the make, type and model of brakes of the tractor-trailer unit in question. Answer: * * * I am informed that the service brakes on the tractor were standard Ford 4-wheel air brake equipment, probably of the Bendix-Westinghouse make. There was also a mechanical brake which operated on the drive shaft of the tractor. The trailer was equipped with air brakes, but I do not know the make." Interrogatory No. 11: "Describe all braking systems on said tractor-trailer unit and how said systems operate. Answer: As I understand the air brake system, the brake shoes are applied to the brake drums by air pressure developed and maintained in reservoirs by a compressor operated by the tractor engine. Operation of the air brakes is controlled by valves, one of which is operated by the brake pedal and the other by a hand lever. Use of the brake pedal applies the brakes on all wheels, including the trailer wheels. Use of the hand lever applies only the trailer brakes. The drive

shaft brake was operated by mechanical linkage controlled by a handle." Other evidence indicated the air brakes were connected by a rubber hose from the tractor to the trailer. If the hose develops a leak "after a pressure gets so low it locks the brakes."

█ It is our view that the meager testimony outlined above is insufficient to be deemed substantial testimony that the brakes on the tractor-trailer unit did not meet the standards required by the Kansas Statute, Section 8–5,101, and hence is insufficient to make a submissible case. The answer to interrogatories No. 10 and No. 11 describe a *braking system* which plaintiffs do not contend is not sufficient to meet the statutory requirements.

Nor do we believe that the testimony of application by defendant George of only one of the two sets of brakes (the air brakes) on the tractor-trailer unit under the described emergency conditions, George then jumping out, "and *then* the truck rolled back down the hill" is sufficient to permit a jury to find that the reason the truck rolled down the hill was because the brakes were insufficient to comply with the statutory requirements therefor. The jury would have to engage in speculation in order to reach such a conclusion. The reason just as well could be that George in his great haste to escape the burning trailer did not sufficiently set the air brakes. Then, again, one might speculate that the air brakes gave way because the fire caused them to lose part or all of their holding power.

One matter that might have shed some light on the subject is how long the air brakes held, if at all, after George applied them. However this, also, is speculative. The entire answer to this question appears to rest on the words, "and *then* the truck

stop and hold such vehicle or combination of vehicles, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that fail-

ure to any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels * * * (b) (2) * * * said hand brake shall be adequate to hold such vehicle or vehicles stationary on any grade upon which operated."

rolled back down the hill." Webster's International Dictionary (3rd New Addition) defines "then" as being capable of several meanings, namely, (1) at that time, (2) soon after that, and (3) following next after this. There is nothing in the context of the brief statement Officer Toura said that George made that points to which of these possible meanings the declarant intended.

We next consider whether the evidence to the effect that George applied the air brakes, and inferentially that he did not apply the drive shaft brake, was such as to make a submissible case on whether that action by George breached his duty to exercise ordinary care under the circumstances. Counsel for the defendants has sited to us the case of Trinity Universal Insurance Company v. Farmers' Co-operative Exchange of Morland, 171 Kan. 501, 233 P.2d 468, as controlling on this issue. In that case plaintiff alleged in its petition that defendant's employee, Richmeier, was making a delivery of certain motor fuels to a motor company; that the defendant's tank wagon stopped at the motor company and was unloading motor fuel from the tank wagon by a hose attachment running from the tank to the protruding spout of an underground tank; that after inserting the hose into the spout, Richmeier walked to the front end of the tank wagon and in some manner unknown to plaintiff the motor fuel being unloaded became ignited and the motor vehicle and tank wagon caught fire; " '[t]hat the defendant, Richmeier, thereupon entered into the cab of said truck and tank wagon and started to drive the same in an easterly direction along Main Street of the said City of Morland. That while said truck and tank wagon was being so driven while the motor fuels or petroleum products therein contained, together with the tank wagon were blazing and on fire. That said defendant, Richmeier, drove said motor vehicle for approximately one-half to three-fourths of a city block to the east of said Dinkel Motor Company, and then negligently and carelessly abandoned said burning motor truck and tank wagon, while the same was still running upon said public highway.' And that as a direct and proximate result of the negligence of Richmeier in abandoning the motor truck and tank wagon while it was on fire and in permitting the truck and wagon to continue running down the public street while unattended, the truck and tank crashed into another motor vehicle which was parked north of the building occupied by Keith, the tank wagon exploded and ignited the building occupied by Keith, causing the building and contents to be destroyed by fire." In deciding the question the Kansas Supreme Court discussed and applied the sudden peril or sudden emergency doctrine saying, "In 38 Am.Jur. p. 686, acts in emergency or sudden peril are treated in this manner: 'The prudence and propriety of an action are not to be judged by the event but by the circumstances under which it was done. The rule, as stated generally, is that one who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence, provided he exercised in the emergency the care of a reasonably prudent individual under like circumstances. The fact that injurious consequences might have been avoided had he selected another course of conduct does not charge him with negligence. An act of self-preservation performed in circumstances of extreme danger is not to be judged by the rules which are applicable ordinarily to acts done in cold blood, with time and opportunity for the party to consider the consequences and the methods of the act he is about to do. Failure to exercise the best judgment in an emergency created by another person is not necessarily negligent even though the error of judgment has results which are lamentable from the standpoint of injurious consequences to third persons.' " The Kansas Supreme Court concluded: "Under the allegations of the petition the emergency occurred when the tank wagon and truck became afire. Perhaps a calm deliberation

would have led to a conclusion that if left standing in front of the garage the truck and the tank and its contents would have burned where they stood, without any explosion of the tank and without any damage to the surrounding property, or perhaps that same calm deliberation would have led Richmeier to realize that fire in the tank wagon would produce an explosion dangerous to any person or property nearby and that prudence demanded that it be removed speedily to some locality where possible damage would be limited perhaps to the truck and tank itself. The fact that injurious consequences might not have followed had he left the truck and tank stand where the fire started does not convict Richmeier of negligence. Whichever course he concluded and acted upon would not convict him of actionable negligence. The petition charges however that he was negligent in abandoning the truck and tank without pausing to stop them. The fact that Richmeier left the burning truck and tank may not be so isolated from the entire course of events alleged and he may not be said to have been negligent in not remaining in a position of danger and peril until he stopped the truck and tank. The emergency started with the inception of the fire and did not end until the explosion. There is no allegation capable of interpretation that Richmeier by any act of his created the emergency. In our opinion, the allegations of the amended petition did not charge Richmeier with actionable negligence, and the trial court did not err in sustaining the defendants' demurrer."

The Kansas Supreme Court in the Trinity case, supra, relied on an earlier Kansas decision stating, "In Barnhardt v. American Glycerin Co., 113 Kan. 136, 213 P. 663, 31 A.L.R. 721, the defendant was transporting two loads of nitroglycerin by motor vehicles. One became on fire and after it passed plaintiff's home about 800 feet distant was a steep hill. The vehicle on fire could not make the hill, its driver abandoned it and it ran back down the hill and upset. About a half an hour later the nitroglycerin exploded and plaintiff received injuries for which she sought damages. From a judgment for plaintiff, the defendant appealed, contending that for a person to abandon an automobile load of nitroglycerin when the automobile was on fire and stalled on a steep hill was not actionable negligence. The court reviewed some of the authorities, said that courts take judical notice of the highly explosive qualities of nitroglycerin and that it explodes more readily when heated, stated there was no fault of the driver that the automobile was on fire or stalled, no showing he could have put out the fire or prevented the automobile from going back down the hill, or done any good in any way by staying, and held: 'One driving an automobile loaded with nitroglycerin, who discovers that the automobile is on fire, the fire not having been caused by any lack of care on his part, and being stuck on a steep hill, is not guilty of actionable negligence in abandoning the automobile.' (Syl. 1.)

"Reference is made to Hill v. Southern Kansas Stage Lines Co., 143 Kan. 44, 53 P.2d 923, for a statement of the facts, but where it was held: 'In determining whether deceased was guilty of contributory negligence, rule followed that one who in a sudden emergency acts according to his best judgment or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence.' (Syl. 3.)

"In White v. Toombs, 164 Kan. 635, 192 P.2d 174, where the defendant relied on the rule to avoid liability for plaintiff's injuries, it was said: 'Subject to certain exception, not present in this case, one who acts in an emergency is not chargeable with negligence.' (Citing cases.) 164 Kan. loc. cit. 639, 192 P.2d 177."

In Metzinger v. Subera, 175 Kan. 542, 266 P.2d 287 (1954) and Meng v. Penner, 179 Kan. 789, 298 P.2d 246 (1956) the Kansas Supreme Court cited with approval both the Trinity Universal Insurance Co. v.

Farmers' Co-operative Exchange of Morland and the Barnhardt v. American Glycerin Co. cases, supra.

■ It is our duty to apply the Kansas substantive law to the facts before us, and we see no reasonable escape from defendants' contention that the case before us falls within the scope of the Universal Insurance Co., and the Farmers' Co-operative Exchange of Morland cases which have never been overruled and which presumably are still the law of the State of Kansas on this subject. We confess that were we free to apply the substantive law of Missouri we might well reach a different conclusion. See the persuasive dissent of Justice Wertz, Metzinger v. Subera, 175 Kan. 542, 266 P.2d 287, 292. However, if as a matter of Kansas substantive law involving the emergency doctrine one cannot be found negligent for abandoning a moving vehicle containing a highly explosive charge that is on fire *without setting any of the vehicle's brakes* it is logically inescapable that under that same law one under similar circumstances of emergency who sets only one of two sets of brakes on such a burning vehicle cannot be found negligent for his failure to set other or additional brakes.

■ Plaintiffs' final contention is that defendant George was required to drive as close as practical to the right hand curb of Third Street while turning onto State, pursuant to Section 8–544 of the General Statutes of Kansas, 1949, and that the physical facts and circumstances in evidence constitute substantial evidence of George's violation of this statutory duty, which violation is negligence as a matter

of law.[3] The difficulty with this contention is that plaintiffs failed to adduce substantial evidence from which a jury could find that the right turn was not "made as close as practical" to the right-hand curb. There is no showing as to how far from the right-hand curb the nearest portion of the 45 foot long vehicle was at any particular time during the turn. Nor is there any showing as to what lane the tractor-trailer was in as it commenced its right turn or when it completed its turn. It is common knowledge and a physical fact that a vehicle 45 feet long cannot, along its full length, hug or be immediately adjacent to the curb while making a right-hand turn and remain in the roadway. The bare fact that the Pontiac coming from some unspecified place managed to strike the 45 foot tractor-trailer near the middle of the trailer so as to leave debris at the point earlier described is not sufficient to permit a jury submission of the question of whether the turn was made "as close as practical" to the right-hand curb.

■ In view of our rulings above, it is axiomatic that there is no submissible case against defendant Aetna Casualty and Surety Company, the liability insurer.

While numerous other contentions have been raised by the respondents and appellants these we have discussed are dispositive of the case and it would serve no present purpose to go beyond them.

The judgment is affirmed.

STORCKMAN, P. J., and EAGER, J., concur.

LEEDY, J., not sitting.

3. Section 8–544, General Statutes of Kansas 1949, provides: "The driver of a vehicle intending to turn at an intersection shall do so as follows: (a) Both the approach for a right turn and a right turn shall be made as close as practical to the right-hand curb or edge of the roadway." In State v. Davidson, 152 Kan. 460, 105 P.2d 876, 878, the Kansas Supreme Court ruled, "It is a matter of common knowledge that the driver of a motor vehicle, intending to make a right-hand turn at an intersection, will, for the protection of himself and for others, keep as close as practical to the right-hand curb or edge of the roadway. The standard of conduct imposed by the statute is that of a reasonable man under like circumstances."